**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

FATOUMATA KOUROUMA,

*Petitioner,*

v.

ERIC H. HOLDER, JR., Attorney
General,

*Respondent.*

No. 08-1864

On Petition for Review of an Order of
the Board of Immigration Appeals.

Argued: September 22, 2009

Decided: November 24, 2009

Before TRAXLER, Chief Judge, and GREGORY and
SHEDD, Circuit Judges.

Petition for review granted and remand awarded by published
opinion. Judge Gregory wrote the opinion, in which Chief
Judge Traxler and Judge Shedd joined.

## COUNSEL

**ARGUED**: Kamal M. Nawash, THE NAWASH LAW
OFFICE, Washington, D.C., for Petitioner. Theodore Charles
Hirt, UNITED STATES DEPARTMENT OF JUSTICE,
Office of Immigration Litigation, Washington, D.C., for

Respondent. **ON BRIEF:** Gregory G. Katsas, Assistant Attorney General, Civil Division, Linda S. Wernery, Assistant Director, UNITED STATES DEPARTMENT OF JUSTICE, Office of Immigration Litigation, Washington, D.C., for Respondent.

---

## OPINION

GREGORY, Circuit Judge:

### I.

Fatoumata Kourouma, a citizen of Guinea, appeals the denial of her application for asylum, withholding of removal, and protection under the Convention Against Torture by the Board of Immigration Appeals ("BIA"). We hold that the BIA's decision denying Kourouma's asylum application on the basis of an adverse credibility finding was not supported by substantial evidence, and that Kourouma has established past persecution in the form of female genital mutilation.

### II.

Fatoumata Kourouma is a native and citizen of Guinea who entered the United States on July 7, 2001. At the time of her removal hearing, Kourouma was twenty-six years old. She is of the Malinke Mandingo tribe from the town of Yomou, Guinea. Kourouma attended both primary and secondary school in Yomou and her entire family continues to reside there. At the time of her hearing, Kourouma stated she was working in the United States at a nursing home.

Kourouma testified she decided to come to the United States because, after her marriage to a man her father had given her to, her husband threatened to have her circumcised anew because she had only been partially circumcised before.

Kourouma testified that she was circumcised partially, meaning that she had not undergone infibulation, at age seven in 1987.[1] She has only a vague recollection of the procedure where she was taken with a group of girls of similar age to have the circumcision done. She testified that she has some lingering problems from the circumcision. Kourouma's four sisters are also circumcised.

After her husband demanded that she be recircumcised, Kourouma left Yomou in 2001 and fled to Conakry, the capital of Guinea, along with her daughter. There, she lived with a friend of her mother's. Kourouma departed Conakry when she heard that her husband and her father were looking for her. She believes that were she to return to Guinea, her father and husband would sanction her and have her recircumcised.

Kourouma entered the United States via New York JFK airport using the Malian passport of a woman named Diane Mawa. She received the passport from her mother's friend in Conakry.[2] She was also given an identification card in the name of Diane Mawa, and she presented a copy of it at the hearing as well. That card, unlike the passport, bore her picture not that of Diane. She testified that once she was in the United States, a friend, Mamadou Bobo Sow, picked her up at the airport, a fact reflected in his affidavit presented to the immigration court.

---

[1]According to the State Department Report on Guinea, female circumcision in Guinea includes the process of infibulation where all of the outer portions of the vagina are removed and then sewn closed. In her asylum application and oral testimony, Kourouma stated that she was from the town of Yomou. Yomou, Dalaba Guinea is located in central Guinea close to Conakry to the east. Although there is another town of Yomou, it is located in the extreme south of Guinea, quite a distance from Conakry. Importantly, the State Department report corroborates Kourouma's testimony about her past circumcision, as it states that in central Guinea, it is customary for female circumcision to take place between the ages of four and eight.

[2]After she entered the country in July 2001, Kourouma returned the passport, so she presented a copy of it at her asylum hearing.

On March 15, 2002, approximately eight months after her arrival, Kourouma applied for asylum in the United States. She testified that she applied and submitted her affidavit with the help of her first attorney by giving him the original version of her statement in French, and then he had it translated to be part of her asylum application. On December 6, 2002, the Department of Justice served Kourouma with a Notice to Appear alleging removability on two counts: being admitted as a non-immigrant and staying in the United States for a longer time than permitted. On July 8, 2002, the Department of Homeland Security referred the case to an immigration judge. On September 2, 2003, the Department of Justice charged Kourouma with two additional counts of removability: being admitted to the United States at an unknown time and unknown place, and remaining in the United States beyond the time authorized. In the course of a series of removal hearings, Kourouma, through counsel, conceded that she was removable under Counts One, Two, and Four but denied Count Three.

Kourouma's first hearing before the immigration judge was on April 22, 2003. After the initial hearing, there was a series of continuances because Kourouma changed counsel. However, at the time of her final evidentiary hearing, Kourouma was pro se, and the immigration judge declined to continue the case in order to allow her to secure representation. In the course of her evidentiary hearing on April 4, 2007, Kourouma presented the facts as described above, along with several exhibits including copies of her entry documents and Mamadou Bobo Sow's affidavit.[3] She also introduced a copy of her Guinean passport and her birth certificate to confirm her identity. As background material, Kourouma introduced two country reports on Guinea from the United States State

---

[3]Kourouma brought one witness to offer live testimony on her case, her friend Rokia Koutoure, but the immigration judge declined to hear the testimony when Kourouma stated that Koutoure had only known her since she arrived in the United States.

Department which include sections on the prevalence and type of female genital mutilation practiced in Guinea. The State Department's *Guinea: Report on Female Genital Mutilation or Female Genital Cutting* stated that in 1999, 98.6% of all women living in all of Guinea had experienced some form of circumcision. (J.A. 25.)[4] To support her testimony regarding her past circumcision, Kourouma presented two doctor's letters to the court. The first, dated May 20, 2002, from Carlos E. Covarrubias, M.D., describes a full physical examination of Kourouma. In it, Dr. Covarrubias, when discussing Kourouma's gynecological exam, stated that she has "scattered linear scarring approximately 0.5-1 cm on upper extremity." (J.A. 28.) At the request of the immigration judge, Kourouma provided another doctor's note to state succinctly whether she had been circumcised or not. To this end, she provided a "Verification of Circumcision" from Oluremi T. Ilupeju, M.D., from an examination on September 7, 2006. (J.A. 27.) Dr. Ilupeju's note stated that he had conducted a gynecological examination on Kourouma and found that she had been circumcised.

During the government's cross-examination, Kourouma was questioned concerning an application for asylum made by another alien which bore strikingly similar language to the affidavit offered by Kourouma to support her application. The wording that appeared identically in both affidavits concerned facts of Kourouma's past circumcision and her fear of returning to Guinea. Kourouma could not explain the similarities in the affidavits beyond stating that she provided her statement to her lawyer in French and he had it translated.

At the conclusion of the hearing, the immigration judge issued her decision, concluding that Kourouma was not credible and denying her application for asylum, withholding of removal, and protection under the Convention Against Tor-

---

[4] Citations to (J.A. __) refer to the joint appendix filed by the parties in this case.

ture on the basis of the adverse credibility finding. The judge first found that Kourouma's application for asylum was untimely because she could not determine with sufficient certainty the date when Kourouma entered the country. The judge additionally found that even if considered a timely application, Kourouma had not met her burden to demonstrate eligibility for refugee status because the judge found her to not be credible. The judge was particularly concerned that Kourouma was unable to offer sufficient proof that she was who she claimed to be given that she produced evidence at the hearing which identified her both as Kourouma and as Mawa. The judge chose not to credit the 2003 Guinean passport or birth certificate Kourouma offered as proof of her identity because, in her opinion, they were not sufficiently authenticated or connected specifically to the petitioner. The judge was also concerned with the similarity of Kourouma's affidavit and the previously submitted application, explaining, the "documents speak for themselves." Immigration Judge's Order 14 (J.A. 51). The judge was also concerned with the lack of evidence as to whether Kourouma had been circumcised in the past, the omission of any mention of a fear of future circumcision in her asylum application, and the improbability that if her husband wanted her circumcised again that he would not have done so in the five years they were married and living together. Finally, the judge also found that even if Kourouma had been partially circumcised, that circumcision did not amount to past persecution. Accordingly, the immigration judge denied Kourouma's application.

Kourouma appealed the decision to the BIA. The BIA dismissed her appeal on July 18, 2008, finding Kourouma failed to meet her burden to provide testimony that was believable and sufficiently detailed to provide a coherent, plausible account of her fear of returning to Guinea. In particular, the BIA cited the implausibility of Kourouma's husband not seeking to have her circumcised during their five years of marriage, the lack of any mention of future circumcision in her application for asylum, and the striking similarity between

Kourouma's affidavit and that of a prior applicant. The BIA also shared the immigration judge's concern about the lack of corroborating evidence concerning Kourouma's marriage and her date of entry into the United States.[5] Importantly, however, the BIA did settle the issue of Kourouma's identity when, in summarizing the facts, it stated without qualification that she is a citizen of Guinea. Therefore Kourouma's appeal was dismissed with a renewal of the privilege of voluntary departure. This petition followed.

### III.

When the BIA and the immigration judge both issue decisions in a case, we review both decisions upon appeal. *Camara v. Ashcroft*, 378 F.3d 361, 366 (4th Cir. 2004). This Court reviews those decisions under the substantial evidence standard, affirming the BIA unless "evidence presented was so compelling that no reasonable factfinder could fail to find" eligibility for asylum. *INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992); *Tarvand v. INS*, 937 F.2d 973, 975 (4th Cir. 1991) (citing *Figeroa v. INS*, 886 F.2d 76, 78 (4th Cir. 1989)). In other words, we will uphold the final order of removal of the BIA unless it is "manifestly contrary to law." *Gandziami-Mickhou v. Gonzalez*, 445 F.3d 351, 354 (4th Cir. 2006) (quoting 8 U.S.C. § 1252(b)(4)(C) (2004)). In conducting its review of the case, the BIA may defer to the immigration judge who had a chance to see the testimony, *Rusu v. INS*, 296 F.3d 316, 323 (4th Cir. 2002), and facts found by the BIA are conclusive unless "any reasonable adjudicator would be compelled to find to the contrary." *Dankam v. Gonzalez*, 495 F.3d 113, 119 (4th Cir. 2007) (quoting 8 U.S.C. § 1252(b)(4)(B)). A credibility determination by the BIA is considered a factual determination. *Camara*, 378 F.3d at 367 (citing *Figeroa*, 886 F.2d at 78).

---

[5]The BIA did not address the question of whether Kourouma had submitted her application within the year requirement and neither of the parties argues timeliness on appeal, nor did the BIA rule on whether partial circumcision would be sufficient to constitute past persecution.

Applying this standard to the case before us, we hold that the immigration judge's and BIA's decisions finding Kourouma incredible and denying her asylum application was not supported by substantial evidence. Indeed, Kourouma has established that she suffered past persecution and has the presumption of a well-founded fear of future persecution.

A.

An alien applying for asylum has the burden to prove that "either he or she has suffered past persecution or . . . he or she has a well-founded fear of future persecution."[6] 8 C.F.R. § 208.13(a) & (b). An alien's well-founded fear of future persecution has both objective and subjective components; he or she must prove a subjective fear that a reasonable person in like circumstances would share. *Chen v. INS*, 195 F.3d 198, 201-02 (4th Cir. 1999). To carry his or her burden to prove eligibility for asylum, an alien must "present candid, credible, and sincere testimony demonstrating a genuine fear of persecution." *Li v. Gonzalez*, 405 F.3d 171, 176 (4th Cir. 2005) (quoting *Chen*, 195 F.3d at 201). Thus, the petitioner bears the burden to provide both "candid, credible and sincere testimony demonstrating a genuine fear of persecution" as well as "specific, concrete facts that a reasonable person in like circumstances would fear persecution." *Chen*, 195 F.3d at 202. Where an alien establishes past persecution, it is presumed that he or she has a well-founded fear of persecution which the government must rebut. 8 C.F.R. § 208.13(b)(1).

In this case, the immigration judge denied Kourouma's application, and the BIA affirmed the denial, not on the merits

---

[6]We do not reach the question whether Kourouma has met her burden to show that she qualifies for withholding of removal where she must demonstrate a "clear probability of persecution." *INS v. Stevic*, 467 U.S. 407, 430 (1984). Nor do we reach the question of whether Kourouma has demonstrated it is more likely than not she will be subject to torture were she to return to Guinea entitling her to protection under the Convention Against Torture. 8 C.F.R. § 208.16(c)(2).

of whether she had demonstrated past persecution, but rather because her testimony and supporting documentary evidence were not credible. Kourouma argues upon appeal that she has met her burden to provide clear, believable, and convincing testimony on the basis of her grounds for asylum. More specifically, she argues that she offered sufficient corroboration such that her testimony should have been considered credible, especially given the resolution of the issue of her identity. The government argues to the contrary that the immigration judge's adverse credibility finding is supported by substantial evidence and should be affirmed because there were multiple other reasons besides the issue of her identity that led to the denial of her application.

In making an adverse credibility determination, the court must state specific cogent reasons for why it finds the testimony incredible, although it need not give extensive reasoning on why each piece of the applicant's testimony was rejected. *Tewabe v. Gonzalez*, 446 F.3d 533, 538 (4th Cir. 2004). The same standard applies to documentary evidence, as the immigration judge cannot reject documentary evidence without specific, cogent reasons why the documents are not credible. *See Zahedi v. INS*, 222 F.3d 1157, 1165 (9th Cir. 2000). In determining credibility, the immigration judge, and consequently the BIA, must take into account both the petitioner's testimony and his or her corroborating evidence, whether documentary or testimonial, *In re. A-S*, 21 I. & N. Dec. 1106, 1112 (BIA 1998), and thus may not deny asylum merely on the basis of incredible testimony without considering any corroborating evidence. *See Camara*, 378 F.3d at 370. This Circuit requires that the evidence offered as corroborating evidence be objective in order for it to be considered by the immigration judge and BIA. *See Gandziami-Mickhou*, 445 F.3d at 358-59 (explaining the type of corroborating evidence in *Camara*—official records and government reports—was objective evidence while the evidence offered by petitioner—letters from family—was not). Importantly, the strict rules of evidence do not apply to immigration hearings,

though they may guide an immigration judge in determining admissibility. *Anim v. Mukasey*, 535 F.3d 243, 256 (4th Cir. 2008) (citing *Alexandrov v. Gonzalez*, 442 F.3d 395, 404 (6th Cir. 2006)).

Reviewing both the BIA and the immigration judge's decisions in this case, we find the denial of Kourouma's application for lack of credibility was not supported by substantial evidence. First, the main reason for the immigration judge's denial of Kourouma's application was that her identity could not be confirmed so that the immigration judge could consider the merits of her case. The BIA, however, differed with the immigration judge on the issue of Kourouma's identity. The first page of the BIA's decision states, "The respondent is a native and citizen of Guinea." BIA Order 1 (J.A. 2). The BIA further did not mention any of the other questions about her identity—the passports or identity card—that had so troubled the immigration judge. Thus, this Court in reviewing the appellate record accepts the BIA's finding of Kourouma's identity as supported by substantial evidence.

The finding that Kourouma was who she stated she was in her hearing before the immigration judge bolsters her credibility overall as it relates to her testimony. The fact that her identity could not be confirmed was the basis upon which the immigration judge found the rest of her documentary evidence incredible including her passports, I-94 arrival documentation, and birth certificate. With that evidence now established as credible, it certainly supports her other contentions, in particular the usefulness of the State Department Country Report for Guinea. In the course of the hearing, the immigration judge did acknowledge that she had received into evidence both the State Department Country Report on Guinea and the State Department Report on Female Genital Mutilation in Guinea, yet she did not explicitly mention or consider either in her credibility determination. The BIA did not mention whether it had received or considered the country reports. While country reports are not conclusive evidence

that the petitioner in particular had been circumcised, they are important background evidence that the immigration judge and BIA should consider when evaluating both credibility and the merits of the case. *See Gomis v. Holder*, 571 F.3d 353, 360 (4th Cir. 2009) (discussing and applying the facts contained in the country report presented by the petitioner as evidence of the conditions she would face if she returned to Senegal). Because the BIA established that Kourouma was indeed a citizen of Guinea, the country report she submitted about conditions there should have been considered.

Looking to the country report itself, its contents corroborate Kourouma's testimony. The June 2001 State Department report entitled *Guinea: Report of Female Genital Mutilation (FGM) and Female Genital Cutting (FGC)* noted that in Guinea, 98.6% of women of all tribes and geographical locations had undergone female genital mutilation. (J.A. 25.) Additionally, the report states that in middle Guinea, the location of the town of Yomou, Dalaba, the average age of circumcision is between ages four and eight. (*Id.*) Thus, while the report alone cannot be conclusive evidence that Kourouma herself had undergone female genital mutilation, it certainly supports her contention that at age seven she was circumcised.

The immigration judge was similarly cavalier about the reliability of the two doctors' notes that Kourouma presented with her claim. While the first was less than clear as to where the scarring noted was located, Kourouma's second letter entitled "Verification of Circumcision" from Dr. Oluremi T. Ilupeju was quite clear, stating "A thorough gynecological examination revealed that this patient" "had been circumcised." (J.A. 27.) The immigration judge declined to consider the second letter on the basis that the letter was not notarized. However, as stated above, the rules of evidence do not apply strictly in administrative adjudications of immigration cases, and here the immigration judge could offer no other reason why the letter should not be considered. An immigration judge cannot reject documentary evidence anymore than testi-

monial evidence without specific, cogent reasons why the documents are not credible. *Zahedi*, 222 F.3d at 1165. The mere assertion that a document is not notarized without noting any further indicia of unreliability is certainly not a sufficient reason for rejecting it as incredible. Thus, the two doctor's notes submitted by Kourouma substantially support her testimony.

Kourouma's identity was not the sole reason for the adverse credibility determination, but the additional reasons are similarly not supported by substantial evidence. First, both the immigration judge and the BIA expressed concern that Kourouma's affidavit supporting her application had substantially similar language to the affidavit of another asylum petitioner. The similar application was received into evidence and the immigration judge considered it. However, in articulating her reasons why the application undermined Kourouma's credibility, the immigration judge stated merely, "The documents speak for themselves," and the BIA repeated this language. Immigration Judge's Order 14 (J.A. 51). This is exactly the type of reasoning our decision in *Camara* directed the immigration courts to avoid where we stated that an immigration judge must state "specific, cogent" reasons for the negative credibility finding. 378 F.3d at 367. Here the immigration judge made no statement as to why the affidavits had a negative impact on Kourouma's credibility other than her conclusory statement akin to "I know it when I see it." Further, there was no allegation on the record that Kourouma had committed fraud in submitting her affidavit. This Court could attempt to infer why the affidavit supports a negative credibility finding, but that is not our task. Finally, there was no finding as to which affidavit came first, Kourouma's or the other petitioner's. Thus, the fact of similarity alone can have no effect on Kourouma's credibility.

Second, the immigration judge and the BIA found that Kourouma's failure to mention her fear of future circumcision in her asylum application rendered her testimony and the

statements in the application not credible. In an earlier case, we held that omissions, inconsistent statements, and contradictory evidence are all cogent reasons that support an adverse credibility finding. *Dankham*, 495 F.3d at 121 (quoting *Tewabe*, 446 F.3d at 538). Further, those omissions and inconsistencies which go to the heart of an asylum seeker's claim are greater cause for concern than those which are peripheral. *Id.* at 122. However, the BIA and immigration judge were not entirely on point when they concluded that Kourouma had omitted the core of her asylum claim. In her affidavit, Kourouma stated that at age seven she was forced by her father to undergo female genital mutilation. While the BIA and immigration judge were right in pointing to the fact that she did not specifically mention that she feared *further* mutilation at the hands of her husband, this omission does not matter when her *past* mutilation is sufficient to give a basis for her asylum claim. *Barry*, 445 F.3d at 745.

Finally, the immigration judge and the BIA were concerned with the lack of corroboration of Kourouma's marriage and the implausibility that she would have lived with her husband for five years without him acting on his promise to circumcise her further. We do not consider the lack of corroboration of these facts because these facts are unimportant given the amount of evidence Kourouma offered pertaining to her past circumcision. The fact that the immigration judge and BIA found her story of her marriage and vengeful husband incredible has no bearing in this case on whether she has established past persecution in the form of female genital mutilation at age seven.

Therefore, looking to both Kourouma's testimony and corroborating evidence as required by our decision in *Camara*, we find that the immigration judge's and BIA's decisions rejecting Kourouma's credibility were not supported by substantial evidence. Once Kourouma's identity was established by the BIA, the BIA should have considered the country reports on Guinea as support for her claim of female genital

mutilation. Further, there was no specific and cogent reason for the rejection of both of Kourouma's doctors' letters. The remainder of the immigration judge's and the BIA's reasons had no persuasive bearing on her credibility because the evidence discounted by BIA and immigration judge had no impact on her eligibility for asylum for past persecution. Considering the documentary evidence and Kourouma's testimony, this Court can find little evidence to support a negative credibility finding. We therefore reverse the decision of the BIA as not supported by substantial evidence.

B.

Even though the immigration judge and BIA dismissed Kourouma's application on the basis of her lack of credibility, our discussion of the case need not end there. Based on the evidence before us, we hold that Kourouma has demonstrated past persecution sufficient to make out a prima facie case of qualification for asylum.

It is well-settled in this Circuit that female genital mutilation constitutes persecution within the meaning of the Immigration and Naturalization Act. *See Haoua v. Gonzalez*, 472 F.3d 227, 231-32 (4th Cir. 2007) (citing *Barry*, 445 F.3d at 745). Once a petitioner has satisfactorily proven that she has been or will be subject to female genital mutilation, she has made a prima facie case that she is entitled to asylum and the burden shifts to the government. *Barry*, 445 F.3d at 745. If the government can demonstrate that the petitioner can avoid persecution, then she is not eligible for asylum. *Haoua*, 472 F.3d at 232.

As an initial issue, the immigration judge in her decision indicated that even if Kourouma had shown that she was partially circumcised as she alleged in her testimony, that partial circumcision would not be sufficient to constitute past persecution under asylum law. The BIA did not rule on this issue either way. It is clear under our past precedent that any of the

methods used to conduct female genital mutilation, including clitoridectomy, excision or infibulation, would satisfy the requirements for past persecution. *See* World Health Organization, *Female Genital Mutilation: A Handbook for Frontline Workers* 13 (2000) (detailing methods of female genital mutilation). This Circuit has found that female genital mutilation constitutes past persecution, not because of any particular method of conducting it, but rather because of the serious mental and physical harm it inflicts on the women who endure it. *Barry*, 445 F.3d at 745 (citing *Mohammed v. Gonzales*, 400 F.3d 785, 795 (9th Cir. 2005); *Abay v. Ashcroft*, 368 F.3d 634, 638 (6th Cir. 2004) ("Forced female genital mutilation involves the infliction of grave harm constituting persecution on account of membership in a particular social group that can form the basis of a successful claim for asylum."); *Abankwah v. INS*, 185 F.3d 18, 23 (2d Cir. 1999) ("That FGM involves the infliction of grave harm constituting persecution under Section 101(a)(42)(A) of the Act, 8 U.S.C. § 1101(a)(42)(A) (1994), is not disputed here.")). Thus, if Kourouma can demonstrate that she was subject to female genital mutilation in any form, she has met her burden to prove past persecution.

As discussed above, the doctors' notes presented by Kourouma at her hearing stated that she had been circumcised in the past. The government offered no rebuttal evidence and did not cross examine Kourouma as to those letters, and the immigration judge discounted the letters for hypertechnical evidentiary reasons. *See Secaida-Rosales v. INS*, 331 F.3d 297, 311 (2d Cir. 2003) (holding that the immigration judge's requirement that petitioner provide extensive medical records was "too stringent of a standard" for corroborating evidence) (superseded by statute on other grounds as stated in *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 163-64 (2d Cir. 2008)). Thus, there is no evidence in the record which contradicts the clear statement by Dr. Ilupeju that Kourouma had been circumcised. Combined with the State Department Report that 98.6% of women in Guinea had been circumcised, this is convincing evidence that Kourouma, as she testified, had been circum-

cised. Therefore, because this Circuit accepts that female genital mutilation may provide the basis of an asylum application, we hold that Kourouma has established past persecution and has a presumption of a well-founded fear of future persecution

## IV.

In sum, this Court finds that Kourouma provided believable, corroborated testimony which demonstrated that she had been subject to female genital mutilation. Pursuant to the foregoing, we grant Kourouma's petition for review insofar as it challenges the denial of her application for asylum, and we vacate the BIA and immigration judge's orders with regard thereto. Finally, we remand the case to the BIA for such further proceedings as may be necessary to take evidence and hear argument as to the question of Kourouma's fear of future persecution.

*PETITION FOR REVIEW GRANTED*
*AND REMAND AWARDED*