<u>**UNPUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-1920**

EZGIHIBU HAILE,

                    Petitioner,

          v.

ERIC H. HOLDER, JR., Attorney General,

                    Respondent.

On Petition for Review of an Order of the Board of Immigration
Appeals.

Argued: September 22, 2011          Decided: December 2, 2011

Before MOTZ, GREGORY, and SHEDD, Circuit Judges.

Petition for review granted; vacated in part and remanded by
unpublished opinion. Judge Gregory wrote the opinion, in which
Judge Motz and Judge Shedd joined.

**ARGUED:** David Goren, LAW OFFICE OF DAVID GOREN, Silver Spring,
Maryland, for Petitioner. Brianne Whelan Cohen, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON
BRIEF:** Tony West, Assistant Attorney General, Civil Division,
William C. Peachey, Assistant Director, Office of Immigration
Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

Ezgihibu Haile, a native and citizen of Eritrea, appeals the denial of her application for asylum by the Board of Immigration Appeals ("BIA"). Haile's primary contentions, as detailed in her application, personal statement, testimony, and corroborative evidence, are that she has suffered past persecution in Eritrea because of her father's opposition to the ruling political party and, independently, that she has a well-founded fear of persecution based on her political opinion and membership in a particular social group. As explained below, we grant the petition for review, vacate the BIA's order in part, and remand for further proceedings.

I.

During her initial evidentiary hearing before the immigration judge ("IJ") on January 13, 2005, Haile testified with the assistance of an interpreter to the following: during the time that Haile was in Eritrea, her father was an active member of an Eritrean opposition party, the People's Democratic Front for the Liberation of Eritrea ("SAGEM"). SAGEM opposes the ruling Eritrean People's Liberation Front ("EPLF"). Haile did not know her father was a member of SAGEM until he was arrested and detained by the Eritrean government in August of 2000. Specifically, on August 16, 2000, three armed Eritrean

government police officers entered Haile's home at midnight and violently removed her father. He has not been seen or heard from since. Shortly following her father's arrest, government agents returned to her family home and took Haile and her mother into custody. Haile was verbally abused, threatened, slapped ten times in the face, and interrogated about SAGEM and her father. Haile was told she and her family were traitors and that her father was a bad man and a member of a useless organization. While Haile and her mother were ultimately released following 24 hours of interrogation, they were ordered to bring her father's documents and money to the police station within two days or be killed. They were also forced to sign a document stating that they would not leave the city of Asmara and would report to the government whenever ordered.

Upon their release, Haile and her mother made arrangements to flee the country to avoid persecution. They left the city and within a few days arrived in Sudan. However, SAGEM representatives in Sudan advised Haile and her mother that Sudan was not safe because government officials would soon come looking and either kidnap or kill them. From Sudan, Haile fled to Kenya but her mother was forced to stay behind because there was not enough money for both Haile and her mother to go, and Haile, as the younger of the two, was a more prominent target for government agents. Haile left and has not seen her mother

3

since. Haile traveled to Kenya, then to Italy, and finally to the United States using another person's Netherlands passport to gain admission under the Visa Waiver Pilot Program.

When she arrived in the United States, Haile reached out to SAGEM for support and joined a local branch because of her father's arrest and because she came to believe that the Eritrean government was not serving the people. Since joining in 2001, Haile has actively and openly participated in SAGEM by distributing flyers, donating money, attending monthly meetings, and protesting in public demonstrations despite the Eritrean government sending observers to document the participants. Haile spoke to a friend who told her that she saw Haile on Eritrean television participating in an anti-government demonstration and warned her not to return to Eritrea. Since Haile left Eritrea, she has come to learn that the government has taken her father's property, sealed off her family home, and auctioned off her father's store. Haile fears she will be killed by the Eritrean government for her political activities and her relationship to her father if she were to return to Eritrea.

Haile corroborated her claims with testimony from Tsegal Ghebrihiwot Sedhatu, a U.S. citizen and a native of Eritrea. Sedhatu is a leader of SAGEM. He knew Haile's father when he lived in Eritrea and was told by another SAGEM leader that

4

Haile's father was arrested by the government. Sedhatu met Haile at a SAGEM meeting in Washington, D.C., and has since observed Haile distributing party literature and participating in at least one demonstration. Sedhatu is aware that the Eritrean government has agents in the United States who videotape the demonstrations. He believes Haile would be arrested if she returned to Eritrea.

In addition to her testimony and Sedhatu's, Haile provided additional documentary evidence in support of her claim that she is politically active. She submitted a SAGEM membership card with her name and several photographs showing her participating in anti-Eritrean government demonstrations in the United States. She also submitted an open letter from Amnesty International to the Maltese government, dated June 7, 2004, noting that Malta returned Eritrean refugees and asylum seekers to Eritrea in 2002, and that some have not been seen since. According to the letter, the returnees were detained upon arrival and sent to a military detention center. Some prisoners were released, but those remaining were kept in detention and tortured. Amnesty International indicated that many asylum seekers returning to Eritrea are not safe, including suspected opponents or critics of the government, supporters of exile opposition groups, and conscientious objectors to military service.

A.

On January 13, 2005, the IJ denied Haile's asylum application, contending that Haile's one-day detention by Eritrean police did not amount to persecution and that she had not shown a well-founded fear of persecution on account of her political opinion ("IJ Decision I"). The IJ did not discuss Haile's social group claim apart from stating that "[m]embership in SAGEM is not a social group." The IJ denied Haile relief for failure to meet her burden of proof because the IJ described the testimony as "non-detailed, non-specific and meager." The IJ found it implausible that Haile was a politically active SAGEM member because (1) Haile could not state that the acryonym "SAGEM" stands for "the People's Democratic Front for the Liberation of Eritrea"; (2) she was non-detailed when asked what she meant by the word "masquerades" on a sign she held at a demonstration; and (3) her testimony lacked detail concerning the group's reasons for demonstrating when asked about a specific demonstration. The IJ also noted that an alien whose first sign of political opposition takes place after arriving in the United States is viewed with a high degree of skepticism and that Haile's testimony that a friend told her she saw her on Eritrean television was not corroborated in any way. The IJ gave no weight to Sedhatu's testimony. It also gave little or no weight to the letter from Amnesty International.

6

B.

On May 8, 2006, the BIA, in one sentence, affirmed without opinion IJ Decision I. Haile filed a petition for review that resulted in a remand from this Court because the IJ never discussed Haile's social group claim. On remand from the Fourth Circuit and the BIA, the IJ was instructed to adjudicate whether Haile possessed a well-founded fear of persecution as a member of a particular social group. Haile v. Gonzales, No. 06-1650 (4th Cir. Mar. 23, 2007).

The IJ conducted a second evidentiary hearing on April 14, 2008, at which Haile submitted additional evidence to support her petition for asylum, including a letter from a family friend, Azeb Woldearegay, indicating that the situation in Eritrea is dangerous for family members of persons arrested by the government, that Haile's father's shop was still shut down and sealed by authorities, and that if Haile were there now she might encounter the same fate as her father. Haile also submitted an additional photograph of herself at a demonstration and reports from the U.S. State Department, Amnesty International, and Freedom House indicating the harsh treatment Eritrea exacts toward individuals suspected of opposing the government or having ties to political dissidents. She further testified that the Eritrean government believes she has some information to offer about other dissidents and that she fears

7

returning to Eritrea because of own her political activities and her father's.

On April 14, 2008, the IJ again denied relief, ("IJ Decision II"), finding that Haile "is a member of a particular social group; that is, her family, her father. But [she] has failed to establish a nexus between that membership and a protected ground." According to the IJ, Haile was detained in order to secure information about her father's activities and not her own. The IJ based this on the fact that Haile was not forced to confess involvement in SAGEM, and it did not appear that authorities believed she was involved in SAGEM. The IJ also speculated that because the Eritrean government had the opportunity to keep Haile and her mother detained yet did not, this implies the government does not intend to persecute members of her father's family.

The IJ gave little weight to the letter submitted by Haile from her friend because it was unsworn. IJ Decision II also made no mention of Sedhatu's testimony or the other documentary evidence including the reports from the State Department, Amnesty International, and Freedom House.

C.

On April 29, 2008, Haile timely filed a notice of appeal of the IJ's denial of her claim for asylum. In addition to review of the IJ's denial of her social membership claim, Haile

8

requested review of the imputed-political opinion claim because the BIA had never expressed an opinion on that claim in its one-sentence affirmance of IJ Decision I.

On July 14, 2010, the BIA dismissed the appeal, finding that Haile failed to show she was entitled to asylum. The BIA agreed with the IJ that Haile did not establish she was subjected to past persecution, and she did not show she has a well-founded fear of persecution on account of her membership in a particular social group or her political opinion. The BIA credited the IJ's speculation that because the government did not make Haile or her mother confess to being SAGEM members and released them after interrogation, the government was not motivated by a belief that Haile was a SAGEM member or by a desire to persecute family members of Haile's father. A dissenting opinion was issued, stating the dissenting judge "would have found Haile was a credible witness and established a well-founded fear of persecution on account of her political opinion and her membership in a particular social group, i.e., her family, if returned to Eritrea." Haile timely filed a petition for review.

## II.

When the BIA and the IJ both issue decisions in a case, we review both decisions on appeal. <u>Camara v. Ashcroft</u>, 378 F.3d

361, 366 (4th Cir. 2004). In so doing, we apply the substantial evidence standard, affirming the BIA's determinations unless "evidence presented was so compelling that no reasonable factfinder could fail to find eligibility for asylum." Kourouma v. Holder, 588 F.3d 234, 240 (4th Cir. 2009) (internal citations omitted). In other words, we are bound to uphold the BIA's determinations unless they are manifestly contrary to the law and an abuse of discretion. See Lizama v. Holder, 629 F.3d 440, 444 (4th Cir. 2011). "The BIA may be held to have abused its discretion if it failed to offer a reasoned explanation for its decision, or if it distorted or disregarded important aspects of the applicant's claim." Tassi v. Holder, No. 10-2194, slip op. at 13 (4th Cir. Nov. 7, 2011). And while a credibility determination is considered a factual determination, Kourouma, 588 F.3d at 240, the deference accorded to such findings is not absolute, Jian Tao Lin v. Holder, 611 F.3d 228, 235 (4th Cir. 2010). An IJ must offer specific, cogent reasons for rejecting the applicant's testimony as incredible. See Kourouma, 588 F.3d at 241. Further, even if the IJ determines the applicant's testimony is incredible, it may not do so without evaluating the applicant's independent evidence. Jian Tao Lin, 611 F.3d at 236. This Court will remand where "it is likely that the IJ would have reached a different outcome if he had given due consideration to the independent evidence that he [improperly]

10

discounted." Anim v. Mukasey, 535 F.3d 243, 261 (4th Cir. 2008). With the foregoing principles in mind, we evaluate each of Haile's claims in turn.

                              III.

Haile argues that she has established eligibility for asylum through past persecution and, independently, through a well-founded fear of future persecution based on her political opinion and her membership in a particular social group.

Under the Immigration and Nationality Act ("INA"), an alien applying for asylum has the burden of showing either past persecution or a well-founded fear of future persecution "on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). If the applicant is able to demonstrate past persecution, she is "presumed to have a well-founded fear of persecution on the basis of the original claim." 8 C.F.R. § 208.13(b)(1).

Persecution is an extreme concept, and not every incident of mistreatment or harassment constitutes persecution within the meaning of the INA. Qui Hua Li v. Gonzales, 405 F.3d 171, 177-78 (4th Cir. 2006). Courts "have been reluctant to categorize detentions unaccompanied by severe physical abuse or torture as persecution." Id. at 177. Because we cannot say Haile's

                              11

evidence of past persecution was so compelling that no reasonable fact-finder could fail to afford Haile the presumption of a well-founded fear of persecution, we do not take issue with BIA's denial of this presumption.

Independent of past persecution, an applicant can still establish a well-founded fear of future persecution by "provid[ing] both candid, credible and sincere testimony demonstrating a genuine fear of persecution as well as specific, concrete facts that a reasonable person in like circumstances would fear persecution." Kourouma, 588 F.3d at 240 (internal citations omitted). Haile claims she has a well-founded fear of future persecution based on her membership in a particular social group and her political opinion.

A.

Membership in a particular social group is a protected ground under the INA. 8 U.S.C. § 1101(a)(42)(A). Haile defines her membership in a particular social group as a member of the nuclear family of her father, who was a member of SAGEM, and was arrested and disappeared for his political activities.

It is well established in the Fourth Circuit and sister circuits that "family" qualifies as a "particular social group" within the meaning of the INA. Crespin-Valladares v. Holder, 632 F.3d 117, 125 (4th Cir. 2011) ("[T]he family provides a prototypical example of a 'particular social group.'") (internal

12

citations omitted).  The IJ agreed that Haile "is a member of a particular social group; that is, her family, her father."

Once it is established that an applicant is a member of a particular social group, a separate question of causation must be determined to support eligibility for asylum.  An applicant must show she has a well-founded fear of persecution based on h[er] membership in that group, an inquiry that contains both subjective and objective components.  Kourouma, 588 F.3d at 240.

In this case, the IJ denied Haile's social membership claim, and the BIA affirmed the denial.  On remand from this Court and the BIA, the IJ was specifically instructed to adjudicate whether Haile possessed a well-founded fear of persecution as a member of a particular social group.  It did not do so.  The IJ held that Haile failed to establish a nexus between membership and a protected ground.  This is an imprecise formulation of the well-founded fear test, and we believe this imprecision resulted in an incorrect application of the test. The proper inquiry is whether there is a nexus between fear of persecution (not membership, as the IJ stated) and a protected ground (here, family membership).  The IJ could not properly evaluate whether Haile possessed a well-founded fear of persecution as a member of a particular social group where it misapplied the test and failed to examine whether there is a nexus between Haile's fear of persecution and Haile's membership

13

in her family.   The BIA erred in failing to recognize the IJ's glaring legal error concerning the heart of Haile's claim, rendering the BIA order manifestly contrary to law and an abuse of discretion.

Further, even if the IJ had correctly applied the test, the IJ improperly relied on "isolated snippets of [the] record," Baharon v. Holder, 588 F.3d 228, 233 (4th Cir. 2009), to support its factual finding that the Eritrean government was not motivated by a desire to persecute family members of Haile's father.   The IJ based its denial of Haile's family-membership claim on the sole fact that neither Haile nor her mother were involved in SAGEM in Eritrea, and the government released them after the interrogation when it had the opportunity to keep Haile and her mother detained.   While it is true that Haile and her mother were released within 24 hours, the government's interest in Haile and her mother did not end there.   Haile testified that she and her mother were ordered to bring all of her father's documents and money back to the police station within two days or be killed and were forced to sign a document indicating they would not leave Asmara and would report to the government whenever ordered.   The government also accused Haile and her parents of belonging to a family of betrayers bent on dismantling the EPLF and the new nation.   An IJ is not entitled, as it did here, to "base [a] decision on only isolated snippets

14

of [the] record while disregarding the rest." Baharon, 588 F.3d at 233.

Moreover, drawing a conclusion that the Eritrean government does not desire to persecute members of Haile's family today, improperly relies on "speculation, conjecture or an otherwise unsupported personal opinion." Jian Tao Lin, 611 F.3d at 237. Even if one were to accept it was not the government's motivation ten years ago to persecute family members of Haile's father,[1] this does not support a finding that it would not be the Eritrean government's desire today and that Haile has no good reason to fear future persecution if returned to Eretria today. Indeed, the evidence presented overwhelmingly supports the conclusion that she does. And while it is not our job to reweigh the evidence before the IJ, "[i]t is, however, our responsibility to ensure that unrebutted, legally significant evidence is not arbitrarily ignored by the factfinder." Baharon, 588 F.3d at 233.

---

[1] This is a difficult conclusion to accept. The Eritrean government was likely motivated by multiple desires when it arrested and detained Haile and her mother -- to find out information regarding the father's contacts, to obtain documents and money belonging to him, and to persecute family members of Haile's father. The fact that Haile and her mother were released with orders to return to the police station in two days with documents and money only implies that the government was acting in a commonsense sequence if it wanted to fulfill all of those desires.

15

In view of the fact that Haile and her family are certainly known to the Eritrean government, that the Eritrean government has already accused Haile of belonging to a "family of betrayers" and of being involved in the Eritrean opposition, that she failed to return to the police station with documents and money in violation of direct orders, that she fled Eritrea after signing a document stating she would stay and report as required, that she has since openly engaged in opposition activities against the Eritrean government that are routinely documented and observed by Eritrean government agents, and that the harsh treatment Eritrea exacts toward individuals suspected of opposing the government or having ties to political dissidents is undisputed, it does not take much imagination to find that a reasonable person in Haile's circumstances would fear persecution on account of her membership in her family if returned to Eritrea.

In addition to misapplying the well-founded fear test, emphasizing portions of the record to support its factual findings, and engaging in speculation and assumption, the IJ further erred in failing to consider Haile's corroborating evidence. In addition to her testimony, Haile submitted documentary evidence corroborating her reasonable fear of persecution based on her family membership, including the current Country Report on Human Rights Practices for Eritrea,

16

the Amnesty International 2007 Annual Report for Eritrea, and The Freedom House Countries at the Crossroads 2007 country report for Eritrea, indicating the harsh treatment Eritrea exacts toward individuals suspected of opposing the government or having ties to political dissidents. Neither the BIA nor the IJ gave any weight to this evidence. The failure to consider the reports is an error; "the immigration judge cannot reject documentary evidence without specific, cogent reasons why the documents are not credible." Kourouma, 588 F.3d at 241.

"Without [the IJ's] erroneous perception of the record, it is far from clear that the [IJ] would have" made the inferences and conclusions that it made. Jian Tao Lin, 611 F.3d at 238. Accordingly, we grant Haile's petition for review of her social group claim and remand.

B.

Our scrutiny of the IJ's ruling with regard to Haile's political opinion claim begins with some of Haile's most crucial evidence, Tsegal Ghebrihiwot Sedhatu's corroborating testimony. Of significance, Sedhatu's testimony pertains directly to one of the IJ's primary credibility findings against Haile. Haile testified that she is a politically active member of SAGEM, and she submitted a membership card and photographs to support her claim that she is politically active. Sedhatu, a leader of SAGEM, corroborated Haile's claim. Nevertheless, the IJ found

17

it "implausible" that Haile was a SAGEM member and active politically because she was unable to articulate what the acronym SAGEM stands for in English and because her testimony lacked detail concerning the group's reasons for demonstrating.

We are skeptical of the IJ's adverse credibility finding based on an applicant's inability to articulate what an acronym stands for in her non-native language.[2]  Nonetheless, even if an IJ determines that the applicant's testimony is incredible, "he must nevertheless evaluate the applicant's independent evidence."  Jian Tao Lin v. Holder, 611 F.3d 228, 236 (4th Cir. 2010).  The IJ failed to do so.  And, as we have previously observed, a "letter from [a] party leader" on behalf of a party member seeking asylum can corroborate the applicant's claims.  See Camara v. Ashcroft, 378 F.3d 361, 369 (4th Cir. 2004).  Sedhatu provided even more as a live in-court witness, lending substantial credence to Haile's claim.  It was erroneous, then, for the IJ to fail to provide any specific, cogent reason for

---

[2]  This is especially troubling here where "S-A-G-E-M" translates to "the People's Democratic Front for the Liberation of Eritrea" and despite her inability to spell out those specific words, Haile stated she could explain what the organization does.  Specifically, Haile testified that SAGEM is "[op]position to the government in power", its goals are to have "better administration" in the government of Eritrea, and she joined because of the sufferings her family experienced and because "the government of Eritrea is not one that would be able to serve Eritrean people."

18

disregarding Sedhatu's testimony, particularly when the IJ did not question Sedhatu's credibility.

Further, even if the IJ had properly rejected both Haile's and Sedhatu's testimony as incredible, it erroneously failed to consider whether the Eritrean government would impute a political opinion to Haile. This is a second misapplication of the well-founded fear standard in the IJ's analysis of Haile's claims. It is well established that when deciding whether an applicant has a well-founded fear of persecution on account of political opinion, one must look at the applicant from the perspective of the persecutor. See M.A. v. INS, 899 F.2d 304, 326-27 (4th Cir. 1990). Neither the IJ nor the BIA considered whether the Eritrean government would impute a political opinion to Haile even if evidence were to support the finding that Haile was not sincere.

IV.

In sum, the IJ and the BIA committed multiple legal and factual errors. In the first category, the IJ committed legal error when it misapplied the well-founded fear standard as to both Haile's social group and political opinion claims and when it failed to consider corroborating evidence in reaching the conclusion that Haile's testimony was incredible. An IJ's errors of law necessarily constitute an abuse of discretion. See

19

*Menghesha v. Gonzales*, 450 F.3d 142, 147 (4th Cir. 2006). In the second category, several of the IJ's factual findings were not supported by substantial evidence, but by distortion of the record, speculation, and assumption. For its part, the BIA erred in failing to recognize the IJ's errors concerning important aspects of the law and Haile's claims, rendering the BIA order contrary to law and an abuse of discretion. *Tassi v. Holder*, No. 10-2194, slip op. at 23 (4th Cir. Nov. 7, 2011).

V.

Pursuant to the foregoing, we grant Haile's petition for review, vacate the BIA order in part, and remand for further proceedings as may be appropriate.

PETITION FOR REVIEW GRANTED;
VACATED IN PART AND REMANDED

20