WYNN, Circuit Judge,
dissenting:
There is much in the majority’s opinion with which I am inclined to agree. But given that the salient factual findings and reasoned legal conclusions in this well-crafted majority opinion are products of an appellate court rather than the products of the immigration judge or the Board of *280 Immigration Appeals, I respectfully dissent.*
The law applicable to Djadjou’s claim for asylum and withholding of removal under the Immigration and Nationality Act is clear. To establish eligibility for asylum, Djadjou bears the burden of showing either past persecution or a well-founded fear of future persecution “on account of race, religion, nationality, membership in a particular social group, or political opinion.” 8 U.S.C. § 1101(a)(42)(A). If Djadjou is able to demonstrate past persecution, she is “presumed to have a well-founded fear of persecution....” 8 C.F.R. § 208.13(b)(1); see Marynenka v. Holder, 592 F.3d 594, 600 (4th Cir.2010).
In the present case, given the absence of any evidence by the government in rebuttal, if Djadjou demonstrated an instance of past persecution on a protected ground, then Djadjou established an unrebutted presumption of her “well-founded fear of persecution” and, consequently, her eligibility of asylum in this country. Notably, Djadjou’s imprisonment on account of her membership in a particular social group or political opinion “indisputably can constitute [past] persecution.” Camara v. Ashcroft, 378 F.3d 361, 370 (4th Cir.2004) (citing Capric v. Ashcroft, 355 F.3d 1075, 1084 (7th Cir.2004)).
In determining whether an individual is eligible for asylum, the agency must first undertake a credibility determination as to the applicant’s evidence. Here, I am inclined to concur in the majority’s holding that substantial evidence in the record supported the agency’s adverse credibility determination.
However, in my view it is the eviction notice alone that provided the agency with this substantial evidence. All other evidence relied on by the agency was either erroneous as a matter of law or implicated an abuse of discretion. Given that the majority’s decision to affirm the adverse credibility determination is limited to two pieces of evidence relied upon by the agency (i.e., the eviction notice and Djadjou’s asylum application), I will, in turn, limit my expression of dissent to this second piece of evidence — Djadjou’s asylum application.
According to the majority, the inconsistency between Djadjou’s testimony that she was elected secretary general of the Southern Cameroons National Council (“SCNC”) in 1997 and her statement in support of her asylum application, which omitted any reference to her position, provided the immigration judge with a basis for its adverse credibility determination. Ante at 274-75. For the majority, this omission is properly characterized as substantial evidence because, in the majority’s view, Djadjou’s leadership role in SCNC is at the heart of her claim of past persecution. Ante at 275. In my view, however, not only is this alleged omission illusory, this alleged omission most assuredly does not go to the heart of Djadjou’s claim.
First, notwithstanding the immigration judge’s unsupported conjecture that Djadjou had “what appears to be a significant position” J.A. 102, Djadjou’s responsibili *281 ties in SCNC were, by all accounts, limited to passing out flyers and informing SCNC members of meetings in her local area. Accordingly, when Njeck called SCNC officials in Cameroon to verify Djadjou’s participation and past persecution, he did not even ask about her specific title. Further, when asked why an SDF letter and the SCNC affidavit did not mention her specific title, Djadjou testified that “they pay more attention to positions like the president’s position, the vice president’s position ... and the spokesperson position.” J.A. 281. There is no inconsistency in the failure of a document, whether Djadjou’s application or otherwise, to mention a title where the authors of such documents, whether Djadjou or others, considered such title to be unimportant to Djadjou’s persecution claim or her role in the organization. Consequently, this omission, insofar as it is relied upon by the agency to make an adverse credibility determination, is illusory and, indeed, based on the unsupported conjecture that Djadjou’s position in the SCNC was “a significant position” that necessarily required mention in any discussion of Djadjou’s activities as an SCNC member.
Second, Djadjou’s asylum application states that she was persecuted “[bjecause [she] was a member of the SCNC”; it does not claim that Djadjou was persecuted because of her position in the SCNC. J.A. 560. Consequently, ambiguous assertions that Djadjou made while testifying, that may or may not be interpreted as indicating that she was targeted during her second arrest because of her position in the SCNC, do not replace the clear and unambiguous assertions that Djadjou made in her asylum application and become, by judicial fiat or otherwise, the “heart” of her persecution claim. Therefore, not only are the alleged omissions in Djadjou’s application illusory and based on unsupported conjecture, the alleged omissions — even assuming some materiality — simply fail to go to the heart of her persecution claim and, thus, do not provide substantial evidence for an adverse credibility determination. See Ante at 274 (citing Tassi v. Holder, 660 F.3d 710, 716 n. 6 (4th Cir.2011)).
Nonetheless, as noted above, based solely on the immigration judge’s finding of an inconsistency between the eviction notice and Djadjou’s testimony, I am inclined to concur in the majority’s holding that substantial evidence in the record supported the agency’s adverse credibility determination.
However, as the majority aptly explains, notwithstanding an adverse credibility determination, applicants for asylum, such as Djadjou, may establish past persecution through independent evidence. See Camara, 378 F.3d at 369-370. As the majority states, “[t]he agency may not ignore such [independent] evidence and reject the claim solely on the basis of the adverse credibility determination.” Ante at 275 (citing Camara, 378 F.3d at 369-70). Moreover, in reviewing Djadjou’s independent evidence, the “immigration judge cannot reject documentary evidence without specific, cogent reasons why the documents are not credible.” Kourouma v. Holder, 588 F.3d 234, 241 (4th Cir.2009).
Here, among other independent evidence submitted, Djadjou presented the affidavit of Njoh, which provided, in pertinent part, that:
1) ... I am the chairman of the Southern Cameroons National Council in North America....
2) ... SCNC is viewed by the government of [Cameroon] as a secessionist movement and in lieu of this perception, the government persistently embarks on a campaign of arrests, intimidation, *282 harassments, detentions and extrajudicial killing of SCNC members.
5) That our records from the home front through the SCNC Information and Statistic Bureau in Southern Cameroons which is [the] repository of vital biographical information of SCNC members attest to [Djadjou’s] membership and active participation in popularizing the struggle to liberate and restore the statehood of Southern Cameroons. Corroborative and authentic information from the home front reveals that [Djadjou’s] activism in the struggle dates as far back as 1997 and she was instrumental in distributing SCNC flyers, tracts, hand outs and other paraphernalia to the population. Reports from the home front also indicate that she attended meetings and participated in demonstrations. These activities made her the target of acrimonious arrest and detention such as the arrest of 2000. Unimpeachable evidence from the home front reveal that the husband of [Djadjou] ... suffered an arrest and torture as reprisal for [Djadjou’s] activism in the struggle.
6) That in fulfillment of my statutory responsibilities as chairman of the SCNC, I undertake the verification and confirmation of the affiliation of members, as well as this claim of persecution on account of their activities.... I have accordingly verified and confirmed the affidavit from Mr. Henry Nyaah, the Northern Zone Vice Chairman of the SCNC relating to her membership and activism in the SCNC struggle and I attest to it authenticity and credibility. The verification was done through a litany of telephone exchanges I had with Mr. Henry Nyaah.
* * *
We are compelled by credible and authentic evidence as well as verifiable facts from the home front to state without fear of contradiction that ... sending [Djadjou] back to [Cameroon] will undoubtedly make her a palpable target for harassment, arrests, torture and she could possibly be killed....
J.A. 369-371.
Although Njoh, the chairman of the Southern Cameroons National Council of America, was the affiant who attested to Djadjou’s past persecution, including her 2000 arrest, Howard Njeck was appointed by Njoh to testify on behalf of Djadjou in Njeck’s capacity as the Vice Chairman of the Southern Cameroons National Council of America. Njeck’s testimony was primarily directed at providing further authenticating and corroborating details relevant to Njoh’s affidavit. Njeck testified that he and Njoh contacted Yuna, an SCNC official based in Cameroon charged with keeping records of the details and circumstances of SCNC members arrested in Cameroon. Njeck reiterated that the Cameroonian SCNC official, Yuna, reviewed relevant records and confirmed, among other things, that Djadjou was arrested in 2000 for her SCNC activities. Njeck further testified to the accuracy and reliability of Njoh’s affidavit by explaining that the submission of affidavits by SCNC-USA in similar asylum proceedings is “something that [Njoh is] doing with a lot of people” and, consequently, ensuring accuracy and reliability in such affidavits is essential “[i]n terms of credibility” and “in the best interest of [SCNC-USA]” and for future asylum applicants that seek the support of SCNC-USA. J.A. 343.
According to the majority, “[t]he agency ... refused to credit Njeck’s testimony and Njoh’s affidavit with respect to Djadjou’s 2000 arrest and her husband’s 1997 arrest.” Ante at 276. The problem, how *283 ever, is that the immigration judge and Board of Immigration Appeals made no such determination. Indeed, the immigration judge expressly found that “[ijnsofar as [Njeck] testified credibly with Mr. Njoh’s [affidavit] this Court will find him credible.” J.A. 102. Other than the immigration judge’s positive determination of Njeck’s credibility, the record is devoid of any specific, cogent reason(s) for the immigration judge to have discredited Njeck’s testimony or Njoh’s affidavit.
My review of the record reveals only four other findings from the immigration judge relevant to Njoh’s affidavit or Njeck’s testimony. First, the immigration judge noted that Njoh’s affidavit “refers to [Djadjou] as having been arrested one time in 2000.... [However, Djadjou] has no satisfactory explanation as to why the SCNC documents failed to mention her other arrests.” J.A. 103. Although potentially relevant to the immigration judge’s adverse credibility determination, the immigration judge’s finding has no bearing on the reliability of Njoh’s affidavit, which confirms Djadjou’s arrest in 2000.
Second, the immigration judge noted “that the records from the SCNC that were purportedly examined by Mr. Yuna have not been provided to this Court. In sum, this omission is a significant omission.” J.A. 103. This finding, however, to the extent that it is relevant to Djadjou’s 2000 arrest, is erroneous under this Court’s precedent because: (1) a “ ‘letter from [a] party leader’ on behalf of a party member seeking asylum can corroborate the applicant’s claims[,]” Tassi, 660 F.3d at 722 (quoting Camara, 378 F.3d at 369); and (2) “[t]he [immigration judge] did not otherwise assess the probative value of ... or evaluate the reliability of’ Njoh’s affidavit and Njeck’s testimony. Id.
Third, the immigration judge found that “there are no records to corroborate the 2000 arrest of [Djadjou]....” J.A. 103-104. However, given Njoh’s affidavit that confirms the 2000 arrest and Njeck’s testimony, which the immigration judge credited, this finding is unsupported and, indeed, appears to “distort or disregard important aspects of the [Djadjou’s] claim.” Tassi 660 F.3d at 719.
Fourth, the immigration judge made an ambiguous finding that “[p]erhaps [Djadjou] was an SCNC member in Cameroon as testified by Mr. Njeck.” J.A. 107. If we are to take anything from this finding, it is a reaffirmation that the immigration judge regarded Njoh’s affidavit as reliable and Njeck’s testimony as credible.
Nonetheless, the immigration judge concluded that there “is simply no persuasive objective evidence that [Djadjou] was arrested.” J.A. 108. Consequently, the immigration judge found “that the [Djadjou] has not suffered past persecution in Cameroon and accordingly there is no presumption of a well-founded fear of persecution should she return to that country.” J.A. 108. The immigration judge arrived at this conclusion, which either rejected Djadjou’s independent evidence or, alternatively, failed to consider that independent evidence separate and apart from the immigration judge’s adverse credibility determination, without offering specific, cogent reasons why Djadjou’s independent evidence was not reliable, in contravention of this Court’s precedent.
In affirming the agency’s decision, the majority “glean[s] an overall concern [of the immigration judge and Board of Immigration Appeals] about the reliability of Njoh’s and Njeck’s statements [because] they attested to events of which they had no personal knowledge based on records that they had not reviewed and were not submitted.” Ante at 276. To this end, the majority states that “the [Board of Immigration Appeals] essentially found that *284 Njeck’s and Njoh’s statements were unreliable.” Ante at 276. Given that this Court has held that speculation and conjecture are insufficient reasons to discount Djadjou’s evidence, Lin-Jian v. Gonzales, 489 F.3d 182, 189 (4th Cir.2007), it is confounding that the majority’s speculation and conjecture of what the immigration judge and Board of Immigration Appeals “essentially found” and what the majority is able to “glean” from the cold record can form the basis of its decision to affirm.
It is interesting to note that, although the majority opinion repeatedly asserts that the Federal Rules of Evidence do not apply to immigration hearings and concedes that hearsay evidence is admissible in such proceedings (Ante at 276), the majority nonetheless strains to find a basis for the agency’s non-existent “unreliability determination” in relation to Njoh’s affidavit and Njeck’s testimony by making an evidentiary finding that is no where to be found in the record: namely, that “the hearsay nature of [Njoh’s affidavit and Njeck’s testimony], which involved multiple levels of hearsay, contributed to the agency’s concerns about their reliability.” Ante at 276. Although this novel, well reasoned, and potentially persuasive evidentiary finding would be entitled to some consideration by this Court if issued by the immigration judge, it is not the product of either the immigration judge or the Board of Immigration Appeals. Instead, the majority “gleans” it to be so based upon its review of a cold record. In sum, while the record supports the immigration judge’s adverse credibility determination, the record also shows that Djadjou presented independent evidence, separate and apart from her own testimony, that established her past persecution in Cameroon. The agency may not ignore such independent evidence, and the agency may not reject such independent evidence solely on the basis of an adverse credibility determination. Nor may an appellate court “glean” a basis for rejecting independent evidence when no such basis is to be found in the decisions of the immigration judge or Board of Immigration Appeals. Accordingly, I respectfully dissent.

 I reemphasize, as we did in Zuh v. Mukasey, 547 F.3d 504, 513-514 (4th Cir.2008), that consistency in the resolution of immigration cases is a problem area for this and other circuits. See also Benslimane v. Gonzales, 430 F.3d 828, 829 (7th Cir.2005); Eric M. Fink, Liars and Terrorists and Judges, Oh My: Moral Panic and the Symbolic Politics of Appellate Review in Asylum Cases, 83 Notre Dame L. Rev. 2019 (2008); Jaya Ramji-Nogales et al., Refugee Roulette: Disparities in Asylum Adjudication, 60 Stan. L. Rev. 295 (2007).