PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

HANNA MARYNENKA,

*Petitioner,*

v.

ERIC H. HOLDER, JR., Attorney
General,

*Respondent.*

No. 07-1792

On Petition for Review of an Order
of the Board of Immigration Appeals.

Argued: October 27, 2009

Decided: January 25, 2010

Before MICHAEL and GREGORY, Circuit Judges,
and Benson E. LEGG, United States District Judge for the
District of Maryland, sitting by designation.

Petition for review granted; vacated and remanded with
instructions by published opinion. Judge Michael wrote the
opinion, in which Judge Gregory and Judge Legg joined.

## COUNSEL

**ARGUED**: Joshua Adam Berman, BLAINE L. GILBERT &
ASSOCIATES, PA, Baltimore, Maryland, for Petitioner.
Lauren Fascett, Office of Immigration Litigation, Civil Divi-

sion, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Blaine L. Gilbert, BLAINE L. GILBERT & ASSOCIATES, PA, Baltimore, Maryland, for Petitioner. Jeffrey S. Bucholtz, Acting Assistant Attorney General, Civil Division, David V. Bernal, Assistant Director, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

**OPINION**

MICHAEL, Circuit Judge:

Hanna Marynenka, a citizen of Belarus, petitions for review of the decision of the Board of Immigration Appeals (BIA) denying her application for asylum, withholding of removal, and protection under the United Nations Convention Against Torture (CAT). The BIA adopted and affirmed the determination of the immigration judge (IJ) that Marynenka had failed to meet her burden of establishing past persecution or a well-founded fear of future persecution. Because the IJ committed substantial legal error in rejecting certain of Marynenka's corroborating evidence, we grant her petition for review, vacate the BIA decision, and remand to allow the IJ to reconsider Marynenka's application in light of this opinion.

I.

A.

Marynenka entered the United States on May 29, 2003, traveling under a J-1 exchange visitor visa that expired on October 1, 2003. She overstayed her visa and, on March 2, 2004, the Department of Homeland Security served her with a notice to appear charging her with removability. Marynenka conceded removability, and in the meantime, in December

2003, filed an application for asylum under 8 U.S.C. § 1158(a)(1), withholding of removal under 8 U.S.C. § 1231(b)(3), and CAT relief, *see* 8 C.F.R. § 208.16(c). The following facts are drawn from Marynenka's statement in support of her application and her testimony and documentary evidence presented at the hearing before the IJ on May 22, 2006.

Marynenka is a member of Zubr, a Belarusian youth organization that opposes the government and works to promote democracy and freedom in Belarus. Marynenka joined Zubr in November of 2001 with her close friend, Hanna Chuyashkova, while both were attending a university in Gomel, Belarus. Chuyashkova, who currently lives with Marynenka in the United States, has also applied for asylum.

Marynenka and Chuyashkova attended their first Zubr demonstration on December 27, 2001, in Minsk, Belarus. The demonstration took place in front of the Committee for State Security (BKGB) building to commemorate the death of Zubr member Andrei Zaytsev. Zaytsev had committed suicide, allegedly in reaction to pressure from the BKGB. No arrests were made at this demonstration. On January 28, 2002, Marynenka and Chuyashkova participated in a second demonstration commemorating Zaytsev's death, this time at their university in Gomel. The police arrested Marynenka at this event and held her for interrogation. When Marynenka did not respond to police questions about her involvement in Zubr, she was beaten. She was detained for three days and, once released, spent five days in bed due to her injuries. Chuyashkova was also arrested, interrogated, and beaten as a result of her participation in the same demonstration.

On July 27, 2002, Marynenka and Chuyashkova joined other Zubr members in a demonstration in Minsk to mark the anniversary of Belarus's independence from the Soviet Union. Marynenka testified that she was arrested for carrying an outlawed red and white flag. She was taken to the BKGB build-

ing where she was again interrogated and beaten. She was detained for five days and thereafter spent five days in a hospital because of two cracked ribs and a ruptured left kidney. Marynenka testified on cross-examination that Chuyashkova had suffered essentially the same injuries after her own arrest at the same event: two broken ribs and a damaged left kidney.

After Marynenka's release from the hospital, her parents received anonymous phone calls warning them that Marynenka should end her participation in Zubr. On September 16, 2002, three internal affairs agents searched the home of Marynenka's parents. According to Marynenka, these agents told her parents "that their daughter would get imprisoned for her actions as a member of Zubr." J.A. 68.

Marynenka and Chuyashkova were called to the dean's office at their university on October 13, 2002. The dean asked them if they were members of Zubr. A BKGB agent who was present accused the two women of participating in Zubr activities, slapped Marynenka on the face, knocked her to the floor, and then kicked her in the stomach.

On November 2, 2002, Marynenka and Chuyashkova took part in a government-sanctioned march in Minsk. When they returned to Gomel the following day, November 3, they were met at Chuyashkova's residence by policemen who forced them into a car and drove them to a forest. Both women were then raped by four policemen. Marynenka submitted a medical record showing that the next morning, on November 4, 2002, she was treated at a clinic for sexual assault. The medical record characterized Marynenka as a "victim" and reported that during her examination "the following was determined: there are numerous abrasions and bruises in the groin area, the entire body reveals multiple lacerations, bruises and scratches, inside the vagina there are numerous ruptures. All of the findings indicate a recent sexual act." J.A. 136.

In further support of her application, Marynenka introduced statements from her mother Nadezhda Marynenka, Hanna Chuyashkova, Zubr member Kiryl Zhurau, and Anzhalika Shuppo. She also submitted documentary evidence establishing that country conditions in Belarus were consistent with her testimony. The regime was undemocratic, brutally oppressive, and engaged in human rights violations to stifle dissent. Rape and sexual abuse of women was widespread.

Marynenka's mother's statement supports Marynenka's activity with Zubr, her allegations of the beatings she received in January and July of 2002, the harassing phone calls and police search, and the November 3, 2002, rape. Chuyashkova's statement confirms both her and Marynenka's association with Zubr. Chuyashkova "personally witnessed what [Marynenka] went through," and Chuyashkova mentions the "anonymous phone calls which [the two] received periodically, warnings from the rector, house searches, threats," and "detentions and beatings." J.A. 143. Chuyashkova's statement focuses on and describes the rapes of both women by four police officers on November 3, 2002. At Marynenka's removal hearing on May 22, 2006, a question was raised as to why Marynenka's friend and roommate, Chuyashkova, did not appear and testify. On cross-examination Marynenka acknowledged that Chuyashkova had personal knowledge of the events described above. When asked why Chuyashkova did not appear as a witness, Marynenka answered that Chuyashkova "had a brain concussion and because of that . . . she is getting treatment and being advised not to be exposed to anything that make[s] her upset." J.A. 43.

Zhurau's statement confirms Marynenka's membership in Zubr. He confirms her attendance at the December 27, 2001, and July 27, 2002, demonstrations, and he saw Marynenka being arrested by police officers during the July 27, 2002, event. Shuppo's statement does not mention the basis for her knowledge, but she says that Marynenka was a member of

Zubr and that Marynenka participated in the December 27, 2001, and November 2, 2002, demonstrations.

B.

The IJ denied Marynenka's application in an oral statement at the conclusion of the May 22, 2006, hearing. The IJ "recognize[d] that country conditions in Belarus have gone from bad to worse." J.A. 167. Although the IJ questioned some aspects of Marynenka's testimony, the IJ did not make an explicit adverse credibility determination with respect to her testimony. The IJ found, however, that Marynenka "failed to meet her burden in establishing past persecution and that she has a well-founded fear of future persecution should she return to Belarus." *Id.* Specifically, according to the IJ, Marynenka "[did] not submit[ ] persuasive corroborating evidence that she was a Zubr member, that she was politically active, that she was arrested, that she was harmed and that she fled Belarus in fear for her life." J.A. 170.

The IJ expressed concern "that [Marynenka] appears to have filed virtually an identical asylum application to that of her friend, Hanna Chuyashkova." J.A. 167. Nevertheless, the IJ recognized that "[i]t would indeed not be unusual for friends and fellow activists to be involved in similar activities, to be arrested at similar times and to be harmed." *Id.* While accepting that "all of these similarities could happen," the IJ was troubled "that Hanna Chuyashkova [wa]s not present to testify on behalf of [Marynenka]." J.A. 168. The IJ noted that Marynenka and Chuyashkova, who were roommates, "could have traveled to Court together today." *Id.* The IJ then expressed skepticism about Marynenka's explanation for Chuyashkova's absence. The IJ observed that Chuyashkova's "alleged brain concussion" occurred in 1999 and that she thereafter "joined Zubr, then participated in numerous demonstrations and was arrested and harmed on several occasions," despite the "requirement that she avoid stress." *Id.* Although Chuyashkova's statement provided specifics about the rapes

that she and Marynenka suffered together, the IJ otherwise saw nothing in Chuyashkova's statement that referred to "arrests with" Marynenka or "being called to the dean's office" with her. *Id.*

The IJ found it "implausible . . . that after th[e] alleged brutal assault [the rape], that [Marynenka] would not go immediately to an emergency room," but rather waited "until 10:00 the next morning" to "seek medical assistance." J.A. 169. The IJ also discounted Marynenka's medical record of the rape because the document was not on clinic letterhead and because she had not established its chain of custody.

The IJ noted the lack of documentation to support Marynenka's claim that she was hospitalized in July 2002 after being interrogated and beaten. The IJ also noted that Shuppo's statement did not provide any foundation for her knowledge of Marynenka's membership in Zubr or her participation at two demonstrations. Nor did Shuppo mention that Marynenka had been harmed or arrested.

Although Zhurau's statement confirmed Marynenka's participation in Zubr and her arrest at the July 27, 2002, demonstration, the IJ did not credit Zhurau because "there is absolutely no way for this Court [the IJ] to corroborate the information in [Zhurau's] affidavit." J.A. 170. Finally, the IJ explained that Marynenka's mother's statement did not overcome the "aforementioned concerns and indeed this letter does not constitute independent evidence of [Marynenka's] alleged persecution." J.A. 170 (citing *Gandziami-Mickhou v. Gonzalez*, 445 F.3d 351, 359 (4th Cir. 2006)).

Based on the foregoing reasoning, the IJ found that Marynenka failed to meet her burden of proof and denied her application for asylum. Similarly, the IJ found that Marynenka did not satisfy her burden of proving eligibility for withholding of removal. Finally, the IJ denied Marynenka's request for protection under CAT because she

failed to prove that it is more likely than not that she would be tortured if removed to Belarus.

Marynenka appealed the IJ's decision to the BIA, which adopted and affirmed the IJ's decision and dismissed Marynenka's appeal. Like the IJ, the BIA did not make an express adverse credibility finding. Instead, the BIA found that Marynenka "ha[d] not met her burden of proof to establish eligibility for relief." J.A. 293. Marynenka petitioned this court for review.

## II.

To establish eligibility for the discretionary grant of asylum under the Immigration and Nationality Act, the applicant has the burden of showing either that she was subjected to past persecution or that she has a "well-founded" fear of future persecution "on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 208.13(b)(1). Fear of future persecution "contains a subjective and an objective component." *Chen v. INS*, 195 F.3d 198, 201 (4th Cir. 1999). The subjective component is satisfied "by presenting candid, credible, and sincere testimony demonstrating a genuine fear of persecution." *Id.* (quotations omitted). "The objective element requires the asylum [applicant] to show, with specific, concrete facts, that a reasonable person in like circumstances would fear persecution." *Id.* at 202. If the applicant establishes past persecution, a rebuttable presumption of a well-founded fear of persecution is also established. 8 C.F.R. § 208.13(b)(1).

To qualify for withholding of removal, the applicant must establish that if she is removed, there is a clear probability that her "life or freedom would be threatened . . . because of [her] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). An applicant "who has failed to establish the less stringent well-founded fear standard of proof required for asylum relief

is necessarily also unable to establish an entitlement to withholding of removal." *Anim v. Mukasey*, 535 F.3d 243, 253 (4th Cir. 2008) (quotations and citation omitted).

To be eligible for protection under CAT, the applicant must show that it is "more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(1), (2); *see Gandziami-Mickhou*, 445 F.3d at 354. The likelihood of torture, however, need not be tied to a protected ground under CAT. *See Dankam v. Gonzales*, 495 F.3d 113, 115-16 (4th Cir. 2007).

"We review the BIA's administrative findings of fact under the substantial evidence rule, and we are obliged to treat them as conclusive unless the evidence before the BIA was such that any reasonable adjudicator would have been compelled to conclude to the contrary." *Haoua v. Gonzales*, 472 F.3d 227, 231 (4th Cir. 2007). We review legal issues de novo. *Abdel-Rahman v. Gonzales*, 493 F.3d 444, 449 (4th Cir. 2007). The agency decision that an alien is not eligible for asylum is "conclusive unless manifestly contrary to the law and an abuse of discretion." 8 U.S.C. § 1252(b)(4)(D). When, as here, the BIA adopts the IJ's decision and includes its own reasons for affirming, we review both decisions. *Camara v. Ashcroft*, 378 F.3d 361, 366 (4th Cir. 2004).

In considering Marynenka's petition for review, we "presume that [she] testified credibly" because neither the IJ nor the BIA made an express adverse credibility determination. *Lin-Jian v. Gonzales*, 489 F.3d 182, 191 (4th Cir. 2007).* Even though a few of the IJ's statements implied doubt about

---

*This principle was codified as follows in the REAL ID Act of 2005, Pub. L. No. 109-13, § 101(a)(3)(B)(iii), 119 Stat. 302, 303 (2005): "if no adverse credibility determination is explicitly made, the applicant or witness shall have a rebuttable presumption of credibility on appeal." 8 U.S.C. § 1158(b)(1)(B)(iii). This REAL ID Act provision does not apply in Marynenka's case because her asylum application was filed prior to the effective date of the provision. REAL ID Act § 101(h)(2).

certain aspects of Marynenka's testimony, both the IJ and the BIA rested their decisions on the lack of persuasive corroborating evidence. At oral argument the government conceded that Marynenka's testimony must be taken as credible because the IJ did not make an express adverse credibility finding.

An applicant's credible testimony, standing alone, "may be sufficient to sustain [her] burden of proof without corroboration." 8 C.F.R. § 208.13(a). "However, even for credible testimony, corroboration may be required when it is reasonable to expect such proof and there is no reasonable explanation for its absence." *Lin-Jian*, 489 F.3d at 191-92 (citing *In re S-M-J-*, 21 I. & N. Dec. 722, Interim Decision 3303 (BIA 1997)). An IJ may not rely on "speculation, conjecture, or an otherwise unsupported personal opinion" to discredit an applicant's testimony or her corroborating evidence. *Tewabe v. Gonzales*, 446 F.3d 533, 538 (4th Cir. 2006) (citation and quotations omitted); *Zuh v. Mukasey*, 547 F.3d 504, 508-10 (4th Cir. 2008).

### III.

The IJ denied Marynenka's asylum application because she did "not submit[ ] persuasive corroborating evidence that she was a Zubr member, that she was politically active, that she was arrested, that she was harmed and that she fled Belarus in fear for her life." J.A. 170. As we explain below, the IJ offered reasons that are unsupportable as a matter of law in discrediting key pieces of Marynenka's corroborating evidence. This evidence relates to Marynenka's rape, her Zubr membership, and her arrest at the July 27, 2002, demonstration.

The IJ committed legal error in discrediting the medical record showing that on November 4, 2002, Marynenka was treated for sexual assault at a clinic in Gomel. The IJ was "not persuaded" by the document because it was not written on clinic letterhead and because Marynenka did not establish a

chain of custody. J.A. 169. However, the document bears a rectangular seal or stamp that reads "Gomel City Clinic No. 10." J.A. 136. The document, which describes in detail the results of a physician's examination, confirms a brutal rape and notes the date and time of the examination. The government offered no reason for the IJ to doubt the legitimacy of the document. And the IJ had no basis, other than conjecture, for rejecting the document on the ground that it was not written on printed letterhead. Finally, with respect to the chain of custody, "the rules of evidence do not apply strictly in administrative adjudications of immigration cases, and here the immigration judge . . . offer[ed] no other [valid] reason" to doubt the authenticity of the document. *Kourouma v. Holder*, 588 F.3d 234, 242 (4th Cir. 2009).

Rejection of the medical document as corroboration apparently cleared the way for the IJ to reach another unsustainable conclusion. The IJ thought it "implausible . . . that after this alleged brutal assault [specifically, the rape], that [Marynenka did] not go immediately to an emergency room," but instead waited until early the next morning to "seek medical assistance." J.A. 169. Waiting overnight to seek medical attention after a traumatic sexual assault is not implausible; if anything, it is understandable. Even in the United States, when the perpetrator of a rape is a stranger, the crime is not reported to police 54 percent of the time. *See* Callie Marie Rennison, Rape and Sexual Assault: Reporting to Police and Medical Attention, 1992-2000, at 3 (Bureau of Justice Statistics, August 2002), *available at* http://bjs.ojp.usdoj.gov/content/pub/pdf/rsarp00.pdf. In addition, of the victims who do not report their rapes to police, only 17 percent seek medical attention. *Id.* The IJ's conclusion that Marynenka would not have waited a few hours to seek medical care appears to be based on conjecture or unsupported personal opinion.

The IJ also committed legal error when she discounted the corroborating evidence from Kiryl Zhurau, a member of the Gomel branch of Zubr since 2001. Zhurau's statement estab-

lished that Marynenka was an active Zubr member. He confirms that he participated with Marynenka in the July 27, 2002, demonstration in Minsk and "saw [her] being arrested by police officers and taken to their vehicle." J.A. 148. The IJ discounted Zhurau's statement because "there is absolutely no way for this Court [the IJ] to corroborate the information in this particular [statement]." J.A. 170. There is no general rule that evidence offered in corroboration requires independent corroboration. Zhurau's statement therefore could not be discredited on the ground that it *automatically* required corroboration.

When we take Marynenka's testimony as credible, "we cannot uphold the IJ's decision based on the stated rationale" that she failed to provide persuasive corroborating evidence. *Zuh*, 547 at 513. The IJ used legally unsupportable reasons to reject the corroborating medical record that confirms Marynenka's rape. The IJ also committed legal error in rejecting Zhurau's statement under what the IJ appeared to regard as a general rule that corroborating evidence requires further corroboration. In short, the IJ's reasoning renders her decision "manifestly contrary to the law and an abuse of discretion." 8 U.S.C. § 1252(b)(4)(D). We recognize, of course, that "our role is not to weigh the evidence and determine which of the competing views is more compelling." *Zuh*, 547 F.3d at 513 (internal quotation marks and citation omitted, emphasis removed). The better course is to vacate the BIA decision and remand the case to that body with instructions that the case be returned to the IJ. The IJ will reconsider Marynenka's application in light of this opinion.

IV.

Marynenka's petition for review is granted. We vacate the BIA's decision denying Marynenka's application for asylum, withholding of removal, and relief under CAT. The case is remanded to the BIA, which will, in turn, remand it to the IJ

for reconsideration of Marynenka's application in light of this opinion.

*PETITION FOR REVIEW GRANTED*;
*VACATED AND REMANDED WITH INSTRUCTIONS*