<u>**UNPUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-1238**

HUMPHREY TEBOH MBAH,

       Petitioner,

    v.

ERIC H. HOLDER, JR., Attorney General,

       Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: March 26, 2010          Decided: July 15, 2010

Before TRAXLER, Chief Judge, and GREGORY and AGEE, Circuit Judges.

Petition for review granted by unpublished per curiam opinion.

**ARGUED:** Danielle L. C. Beach-Oswald, BEACH-OSWALD IMMIGRATION LAW ASSOCIATES, PC, Washington, D.C., for Petitioner. Allison Frayer, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Amy M. Grunder, BEACH-OSWALD IMMIGRATION LAW ASSOCIATES, PC, Washington, D.C., for Petitioner. Tony West, Assistant Attorney General, Civil Division, M. Jocelyn Lopez Wright, Senior Litigation Counsel, Anthony J. Messuri, Trial Attorney, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Petitioner Humphrey Teboh Mbah, a citizen of Cameroon, conceded removability and applied for asylum and withholding of removal under the Immigration and Nationality Act ("INA"), and for relief under the Convention Against Torture ("CAT"). Mbah claims he fled Cameroon after being arrested and suffering physical abuse because of his affiliation with the Southern Cameroons National Counsel ("SCNC"), which advocates independence for southern Cameroonian provinces.

At his asylum hearing, Mbah testified that he was detained twice by government agents as a result of his SCNC activities. Mbah testified that his first arrest occurred on December 31, 1999, in Bamenda while he and other SCNC members were celebrating the announcement that Southern Cameroon had declared independence. According to Mbah, he was detained for five days during which time he suffered numerous beatings. Mbah stated that his detention came to an end as a result of the intervention of the SCNC. Mbah was arrested for a second time in May 2003 during the funeral of former SCNC leader Martin Luma and eventually detained in New Bell prison in Douala. Mbah claims that he was detained for almost two weeks but was ultimately released after his brother arranged a bribe.

An Immigration Judge found that Mbah was not credible in light of "all of the evidence and all of the testimony" before

3

the court. J.A. 58. Specifically, the Immigration Judge concluded that Mbah's credibility was undercut by a number of discrepancies between Mbah's asylum application and his testimony at the hearing, as well as by other implausibilities in Mbah's narrative.

Mbah's corroborating evidence included the testimony of Frida Ngwa, who appeared at the hearing solely to verify that all of the information contained in her previously-submitted affidavit was accurate. Both the Government and the Immigration Judge declined to question Ngwa. According to her affidavit, Ngwa has first-hand knowledge about Mbah's arrest on December 31, 1999 and his subsequent detention. Ngwa was an SCNC National Executive at the time and was able to visit the SCNC detainees who were arrested during the Bamenda celebrations, including Mbah. Based on her observations, Ngwa stated that Mbah had "sustained serious injuries all over his body, especially around his ribs and ankle" and that "[h]e was unable to stand on his feet due to the torture and beat[ings] he got from the arrest." J.A. 295. Her statement was consistent with Mbah's testimony. The Immigration Judge, however, rejected Ngwa's testimony that she visited Mbah in jail because there was no evidence other than her word that she was an executive officer with the SCNC in Cameroon.

4

Mbah also presented the testimony of Eric Takwi, an elected official of the American branch of the SCNC, who appeared primarily to authenticate documents sent from Cameroon by Charles Mbide Kude, the Assistant Executive Secretary General of the SCNC in Cameroon. Kude's documents, in turn, purported to confirm the general details of Mbah's arrests and detentions. At Takwi's request, Kude drafted an affidavit indicating that Mbah had been arrested and detained twice; Kude's information was based not on first-hand knowledge but on reports from the SCNC "Head Office" in Southern Cameroon and "its agents and affiliates, as well as with grass-roots SCNC activists . . . [and] close family relations." J.A. 466. At the hearing, Takwi testified that he had worked with Kude for two years and was familiar with his signature. Neither the Government nor the Immigration Judge questioned Takwi about the authenticity of the Kude documents. Nevertheless, the Immigration Judge rejected the Kude affidavit and the SCNC "Statistics Bureau" Chart that were authenticated by Takwi at the hearing; the judge concluded that there was "insufficient evidence for this Court to find that this particular document is a reliable document" because it did not explain "the source of [its] information." J.A. 59.

The Immigration Judge, having made an adverse credibility determination, concluded that Mbah's corroborating evidence was insufficient to sustain Mbah's burden of proving his claims.

5

The Board of Immigration Appeals ("BIA") affirmed the denial of all forms of relief. It concluded that the adverse credibility determination was not clearly erroneous and that the Immigration Judge properly considered all of Mbah's additional evidence.

Mbah argues that the Immigration Judge erroneously discounted the affidavits and testimony of Ngwa and Takwi, two witnesses who provided important corroboration for Mbah's claim. We agree. Although Ngwa testified at the hearing, she appeared for the primary purpose of affirming her previously-submitted affidavit. Thus, the Immigration Judge, in discrediting Ngwa, was essentially discounting her affidavit which attested to Mbah's condition during his first confinement. An "immigration judge cannot reject documentary evidence without specific, cogent reasons why the documents are not credible." Kourouma v. Holder, 588 F.3d 234, 241 (4th Cir. 2009). The Immigration Judge found "absolutely no corroboration whatsoever as to [Ngwa's] position as a national executive member of the SNC," which the judge believed to be necessary "because according to her affidavit it was in this capacity that she allegedly visited the respondent in jail." J.A. 63.

Thus, the Immigration Judge's specific and cogent reason for rejecting Ngwa's corroborating affidavit was that it lacked its own corroboration. However, "[t]here is no general rule that evidence offered in corroboration requires independent

6

corroboration." Marynenka v. Holder, 592 F.3d 594, 602 (4th Cir. 2010). In fact, it is legal error for an Immigration Judge to reject the statement of a corroborating witness under the mistaken belief that "corroborating evidence requires further corroboration." Id.

Moreover, despite Ngwa's appearance at the hearing, she was never asked to provide objective evidence of her former position in the SCNC or to explain the absence of such corroborating evidence. "[E]ven for credible testimony, corroboration may be required when it is reasonable to expect such proof and there is no reasonable explanation for its absence." Lin-Jian v. Gonzales, 489 F.3d 182, 191-92 (4th Cir. 2007). Significantly, "[t]he requirement that the [witness] provide a reasonable explanation for the lack of corroborating evidence presumes that the IJ offers . . . an opportunity to explain the absence." Id. at 192 (internal quotation marks omitted). By failing to question Ngwa about the lack of corroboration for her status in the SCNC, the Immigration Judge inadvertently foreclosed Ngwa's ability to address the court's concern.

The Immigration Judge also erroneously discounted the testimony of Takwi and the documentary evidence—Kude's affidavit, in particular—introduced through him on hearsay grounds. The Immigration Judge was troubled by the Kude affidavit's lack of a detailed explanation of how the

7

information about Mbah's arrests was gathered. The Immigration Judge concluded that "neither the testimony of Mr. Takwi nor the affidavit of . . . Kude are sufficiently reliable . . . to corroborate [Mbah's] claim." J.A. 59. It is well-established that the rules of evidence do not apply strictly to asylum hearings. See Kourouma, 588 F.3d at 241; Singh v. Ashcroft, 398 F.3d 396, 406-407 (6th Cir. 2005) (explaining that "[e]videntiary matters in immigration proceedings . . . are not subject to the Federal Rules of Evidence"), and hearsay evidence is admissible as corroborating evidence in removal proceedings, see Lin v. United States Dep't of Justice, 459 F.3d 255, 272 (2d Cir. 2006). In rejecting the Kude affidavit, the Immigration Judge did not offer any reason to question the reliability of the document other than the fact that it contained hearsay. Likewise, the government did not offer rebuttal evidence or cross-examine Takwi as to the reliability of the document.

The Immigration Judge, therefore, committed legal error in rejecting the testimony of Ngwa and Takwi and the Kude affidavit, requiring us to vacate the Board's decision and remand for further consideration of Mbah's claims for relief in light of this opinion. See Marynenka, 592 F.3d at 602. In so doing, the immigration judge should also reconsider the adverse credibility determination. Accordingly, we grant Mbah's

8

petition for review and remand for the Immigration Judge to reconsider Mbah's claims for relief.

PETITION FOR REVIEW GRANTED