PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-1879**

ZHIKENG TANG, a/k/a Zhikeng Tansg,

        Petitioner,

    v.

LORETTA E. LYNCH, Attorney General,

        Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: September 20, 2016      Decided: October 26, 2016

Before GREGORY, Chief Judge, and KING and AGEE, Circuit Judges.

Petition denied by published opinion. Judge Agee wrote the opinion, in which Chief Judge Gregory and Judge King joined.

**ARGUED**: Gary Jay Yerman, YERMAN & JIA, LLC, New York, New York, for Petitioner. Sarah Elizabeth Crockett, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF**: Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Civil Division, Leslie McKay, Assistant Director, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

AGEE, Circuit Judge:

Petitioner Zhikeng Tang, a native and citizen of China, seeks review of the decision of the Board of Immigration Appeals (the "Board") denying his requests for asylum, withholding of removal, and protection under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85 ("CAT"). Because substantial evidence supports the Board's decision, we deny Tang's petition for review.

I.

Tang entered the United States in July 2009 without admission or inspection. His wife and child remained behind in Fuzhou City, China, located within the Fujian Province. In August 2011, a coworker introduced Tang to Catholicism, and he began to attend a local church. He filed for asylum later that year, and the government initiated removal proceedings.[1]

_____

[1] Although Tang filed his asylum application more than two years after entering the United States, the immigration judge ruled that Tang's application was timely. An application for asylum must be filed within one year after the alien enters the country, unless the alien shows "either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within the period specified." See 8 U.S.C. § 1158(a)(2)(B), (D) (2012). The immigration judge found that Tang's adoption of Catholicism was a changed circumstance and that he filed his application within
(Continued)

During a hearing before an immigration judge ("IJ"), Tang conceded removability, but sought asylum, withholding of removal, and CAT protection based on his new-found religion. Tang testified that his faith was genuine and that he shared his religious teachings with his family and friends. He submitted letters and other documents evidencing his membership in the Catholic Church. Despite China's recognition of Catholicism, Tang claimed his faith obliged him to attend an underground Catholic church, rather than a state-approved church. Tang maintained that he would proselytize if he were removed to China, and he feared persecution by the Chinese government for participation in an underground church. In support of his claim that he would be persecuted, Tang proffered letters from his wife and a friend, both in China, which represented that there were some instances of persecution of underground Catholic churches in that country. Tang also provided the IJ with two State Department reports that he viewed as critical of China's treatment of certain religious groups.

The IJ determined that Tang's testimony was credible, but that Tang had not met his burden of showing that he would be persecuted in China for practicing Catholicism. The IJ

---

a reasonable time period following his conversion. The Government did not contest this holding before the Board or on appeal. Thus, the timeliness of Tang's filing is not before us.

suggested that Tang would be able to join the Catholic Church sanctioned by the Chinese government and noted that Tang had not explained how this church was not authentic. Despite Tang's testimony and the other evidence submitted in the case, the IJ did not "find enough evidence to establish that [Tang] faces an objectively reasonable risk of persecution on account of his Roman Catholicism." J.A. 49. Because Tang could not meet the standard for asylum eligibility, the IJ concluded that he also failed to satisfy the higher standard for withholding of removal. Finally, with respect to CAT protection, the IJ determined that Tang had "not shown even an objectively reasonable chance that he will face torture in China, much less the requisite 'more likely than not' chance of torture." J.A. 50. The IJ ordered Tang's removal to China.

On administrative appeal, the Board agreed with the IJ that Tang "did not meet his burden to establish his eligibility for asylum or withholding of removal under the Act based on his conversion to Roman Catholicism while in the United States." J.A. 3. The Board found that Tang had not shown that the Chinese government was aware or would become aware of his Catholic faith, nor had he "established that there is a pattern or practice of persecution in China of persons similarly situated to him." J.A. 3. The Board also noted that Tang did

4

not challenge the IJ's CAT ruling and, thus, that claim was waived.

## II.

When the Board adopts and supplements an IJ decision, as it did here, we review both rulings. See Hernandez-Nolasco v. Lynch, 807 F.3d 95, 97 (4th Cir. 2015). Our review is "narrow and deferential," Djadjou v. Holder, 662 F.3d 265, 273 (4th Cir. 2011), and we will uphold the Board's removal decision unless it is "manifestly contrary to law." 8 U.S.C. § 1252(b)(4)(C) (2012). The alien has the burden of proving that he or she is entitled to asylum, withholding of removal, or protection under CAT. See 8 U.S.C. § 1158(b)(1)(B) (2012) (asylum); id. § 1231(b)(3)(C) (withholding of removal); 8 C.F.R. § 1208.16(c)(2) (CAT).[2]

We review the Board's factual rulings under the substantial evidence standard, which dictates that "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B) (2012). In other words, "[w]e uphold factual findings unless no rational factfinder could agree with the [Board's] position." Temu v.

---

[2] Unless otherwise indicated, all citations to the Code of Federal Regulations are to the version in effect at the time the described events took place.

5

Holder, 740 F.3d 887, 891 (4th Cir. 2014). The Board's removal "decisions must remain undisturbed if they are supported by reasonable, substantial, and probative evidence on the record considered as a whole." Tassi v. Holder, 660 F.3d 710, 719 (4th Cir. 2011). We may not reweigh the evidence, see Lin v. Holder, 736 F.3d 343, 351 (4th Cir. 2013), and, "[e]ven if the record 'plausibly could support two results: the one the IJ chose and the one [the petitioner] advances, reversal is only appropriate where the court find[s] that the evidence not only supports [the opposite] conclusion, but compels it.'" Mulyani v. Holder, 771 F.3d 190, 197 (4th Cir. 2014) (quoting Niang v. Gonzales, 492 F.3d 505, 511 (4th Cir. 2007)). We review the Board's legal conclusions de novo. See Hernandez-Nolasco, 807 F.3d at 97.

III.

Tang challenges the Board's denial of asylum, withholding of removal, and CAT protection. We address each in turn.

A.

Tang argues primarily that the Board's decision to deny his asylum request is erroneous. Specifically, he takes issue with the Board's determination that he did not meet his burden of showing a well-founded fear of future persecution. Tang contends that this holding is not supported by substantial evidence.

6

The Immigration and Nationality Act empowers the Attorney General to grant asylum to aliens who qualify as refugees under the statutory definition, at her discretion. See 8 U.S.C. § 1158(b)(1)(A) (2012); Hernandez-Avalos v. Lynch, 784 F.3d 944, 948 (4th Cir. 2015). The alien has the burden of proving that he or she is a refugee, 8 U.S.C. § 1158(b)(1)(B), defined as "any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). "The applicant may qualify as a refugee . . . because he or she has a well-founded fear of future persecution." 8 C.F.R. § 1208.13(b).[3] "Persecution takes the form of 'threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom.'" Singh v. Holder, 699 F.3d 321, 332 (4th Cir. 2012) (quoting Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993)). Actions "less severe than threats

---

[3] An applicant can raise a rebuttable presumption of future persecution by showing that he or she has suffered past persecution. However, Tang did not allege past persecution at any stage of the proceedings and therefore must show a well-founded fear of future persecution to qualify as a refugee for asylum purposes.

7

to life or freedom" may rise to the level of persecution, but they must be something more than "mere harassment." Li v. Gonzales, 405 F.3d 171, 177 (4th Cir. 2005) (quoting Dandan v. Ashcroft, 339 F.3d 567, 573 (7th Cir. 2003)) (internal quotation marks omitted).

Based on the applicable statutory provisions, an applicant "must show (1) that he has a subjective fear of persecution based on race, religion, nationality, social group membership, or political opinion, (2) that a reasonable person would have a fear of persecution in that situation, and (3) that his fear has some basis in objective reality." Rusu v. INS, 296 F.3d 316, 324 (4th Cir. 2002). "The subjective component is satisfied 'by presenting candid, credible, and sincere testimony demonstrating a genuine fear of persecution,'" while "'[t]he objective element requires the asylum [applicant] to show, with specific, concrete facts, that a reasonable person in like circumstances would fear persecution.'" Marynenka v. Holder, 592 F.3d 594, 600 (4th Cir. 2010) (quoting Yong Hao Chen v. INS, 195 F.3d 198, 201-02 (4th Cir. 1999)).

Tang has satisfied the subjective component of his claim based upon the IJ's favorable credibility finding. See, e.g., Ai Hua Chen v. Holder, 742 F.3d 171, 181 (4th Cir. 2014) ("Again, both Li and Chen were found to be credible witnesses. Their task, therefore, was to establish that their genuine

subjective fear of persecution based on their religious faith is objectively reasonable . . . .”).  The only issue, then, is whether he can demonstrate an objective fear of persecution.

An objective fear of persecution exists when “[t]here is a reasonable possibility of suffering such persecution if [the applicant] were to return to that country.”  8 C.F.R. § 1208.13(b)(2)(i)(B).  The alien is required “to provide evidence that there is a reasonable possibility he or she would be singled out individually for persecution” unless “[t]he applicant establishes that there is a pattern or practice [of persecution on account of the applicant’s religion] in his or her country of nationality.”  Id. § 1208.13(b)(2)(iii); see also Yong Hao Chen, 195 F.3d at 203-04.  To establish a pattern or practice of persecution, “[t]he key for the applicant is to show the thorough or systematic nature of the persecution he fears.”  Yong Hao Chen, 195 F.3d at 203.

Here, Tang has not argued that he will be singled out for persecution in China, nor has he asserted that the Chinese government has any awareness of his religious affiliation.  In fact, the Board observed that Tang had presented no evidence suggesting the Chinese government was in any way cognizant of him or his religious beliefs.  Tang, therefore, has waived any challenge to the Board’s conclusion that he failed to prove he would be singled out for persecution.  See Suarez-Valenzuela v.

9

*Holder*, 714 F.3d 241, 248-49 (4th Cir. 2013) ("Consequently, by neglecting to challenge the BIA's findings . . . in his opening brief, Suarez-Valenzuela waived this argument."). In any event, the record contains no evidence that would support that argument.

Thus, Tang can satisfy his burden of proof only by showing a pattern or practice of persecution in China against persons similarly situated to him. He fails to do so.

The determination that Tang did not face "an objectively reasonable chance (at least a ten percent chance) of persecution in China" is supported by Tang's own evidence in the record. Tang, for instance, submitted two State Department documents: a 2012 International Religious Freedom Report (J.A. 197-244) and a 2012 Human Rights Report (J.A. 246-405).[4] These documents confirm that the Chinese government recognizes the Roman Catholic Church, millions of Catholics attend registered Catholic churches, the government "has allowed the Vatican discreet input into selecting some bishops" of the registered Catholic Church, and "an estimated 90 percent of [registered]

_____

[4] Tang offered the State Department's 2014 International Religious Freedom Report, published in late 2015, to this Court in a filing pursuant to Federal Rule of Appellate Procedure 28(j). However, "the court of appeals shall decide the petition only on the administrative record on which the order of removal is based." 8 U.S.C. § 1252(b)(4)(A) (2012). We decline to consider this evidence as it was not part of the administrative record on which the Board and IJ relied.

10

bishops have reconciled with the Vatican." J.A. 201. Moreover, if Tang wishes to attend an underground church instead of an officially recognized church, the State Department documents provide that individuals who do not participate in the recognized church are generally permitted to worship at home without registration, and "[i]n parts of the country, local authorities tacitly approved of or did not interfere with the activities of unregistered groups." J.A. 204. The Board's observation that the State Department reports "do not show that there is a pattern or practice of persecution in China of persons similarly situated to him, ordinary lay practitioners who attend underground Catholic churches" is substantially supported by the record in this case. J.A. 3.

Tang counters with several isolated examples of mistreatment recited in the State Department documents of those who attend unsanctioned Catholic churches and unregistered churches in general. For example, the documents suggest that some local governments "pressure unregistered Catholic priests and believers to renounce all ordinations approved by the Holy See." J.A. 201-02. Tang's arguments are similar to those we rejected in Ai Hua Chen v. Holder, 742 F.3d 171 (4th Cir. 2014).

In Ai Hua Chen, the petitioners were "practicing Christians" who claimed that, if removed to China, they "would be compelled by [their] beliefs to attend an unsanctioned

11

'underground' or 'house' church rather than an 'official registered church' that 'preach[es] about the . . . government's policies.'" Id. at 181-82. In support of those assertions, the petitioners recited isolated incidents noted in State Department documents, like those upon which Tang now relies. We observed, "[a]lthough these materials certainly reported isolated cases of official harassment, the general picture presented by both reports was simply that official treatment of Christians who attend unregistered house churches varies substantially based on locale and that such Christians in many regions practice their religion without interference." Id. at 183. Like Tang here, the petitioners failed to "direct[] us to any portion of these reports suggesting widespread persecution of Christians attending house churches in the Fujian Province." Id. Thus, we concluded that their "evidence [was] not so compelling that we cannot defer to the agency's factual determinations." Id.[5] Likewise, Tang's reliance on random instances of harassment in State Department documents does not demonstrate the widespread persecution he needs to satisfy his burden.[6]

---

[5] We ultimately granted the petition for review on grounds of "China's one-child policy," but we denied the petition "to the extent it [was] grounded on the religious faith of the petitioners." Ai Hua Chen, 742 F.3d at 174.

[6] Tang also references the letters of his wife and a friend, but, at best, these letters show only isolated and sporadic instances of actions related to an underground church.

Accordingly, we conclude -- as we did in Ai Hua Chen -- that the accounts in the State Department reports, which document only isolated instances of harassment and disparate treatment of unregistered Catholic churches in different locations, substantially support the Board's finding of a lack of widespread persecution. We cannot say that "the applicant's evidence 'was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed.'" Djadjou, 662 F.3d at 273 (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)). Therefore, we cannot disturb the Board's conclusion that Tang failed to establish a well-founded fear of persecution. See Ai Hua Chen, 742 F.3d at 184.

B.

Next, Tang contends that the Board erred in denying his application for withholding of removal. Tang asserts that the evidence that supports his claim for asylum likewise allows him to satisfy the withholding of removal requirements.

The withholding of removal eligibility standard requires an applicant to "establish that if she is removed, there is a clear probability that her 'life or freedom would be threatened . . . because of [her] race, religion, nationality, membership in a particular social group, or political opinion.'" Marynenka, 592 F.3d at 600 (quoting 8 U.S.C. § 1231(b)(3)(A) (2012)) (emphasis added). "To establish clear probability, the alien must prove

13

'it is more likely than not that [his] life or freedom would be threatened in the country of removal.'" Lizama v. Holder, 629 F.3d 440, 446 (4th Cir. 2011) (quoting Gomis v. Holder, 571 F.3d 353, 359 (4th Cir. 2009)). This burden of proof is more demanding than that of asylum, and therefore "an applicant who fails to meet the lower standard for showing eligibility for asylum will be unable to satisfy the higher standard for showing withholding of removal." Mirisawo v. Holder, 599 F.3d 391, 396 (4th Cir. 2010). Because Tang failed to meet his burden of proof for asylum, we necessarily hold that Tang has not shown that he is entitled to withholding of removal. See Ai Hua Chen, 742 F.3d at 184.

## C.

Finally, Tang appeals the Board's refusal to extend protection under CAT. He argues that the evidence he presented shows that the government torture of unregistered church members is prolific in China.

An alien may qualify for CAT protection if he or she shows that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). Although Tang brought a claim under CAT before the IJ, he failed to appeal the IJ's denial of that claim to the Board. A final order of removal is reviewable only if "the alien has exhausted all administrative remedies available

14

to the alien as of right." 8 U.S.C. § 1252(d)(1) (2012). Because Tang failed to exhaust his administrative remedies on this claim, we lack jurisdiction to review it. See Cordova v. Holder, 759 F.3d 332, 336 n.2 (4th Cir. 2014).

## IV.

For all these reasons, Tang's petition for review of the Board's decision is

DENIED.