**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 23-2010**

---

HUMBERTO ISRAEL PINEDA VALDEZ; HUMBERTO PINEDA CUELLAR,

Petitioners,

v.

PAMELA JO BONDI, Attorney General,

Respondent.

---

On Petition for Review of an Order of the Board of Immigration Appeals.

---

Submitted:  January 16, 2025                          Decided:  July 21, 2025

---

Before DIAZ, Chief Judge, and WYNN and BENJAMIN, Circuit Judges.

---

Petition denied by unpublished opinion.  Chief Judge Diaz wrote the opinion, in which Judge Wynn and Judge Benjamin joined.

---

**ON BRIEF:**  Brad Banias, BANIAS LAW, LLC, Charleston, South Carolina, for Petitioners.  Brian Boynton, Principal Deputy Assistant Attorney General, Stephen J. Flynn, Assistant Director, Kathryn M. McKinney, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Chief Judge:

In Mexico, the Knights Templar cartel kidnapped and extorted Humberto Israel Pineda Valdez and threatened to kill him and his family. Pineda Valdez and his son entered the United States and sought asylum, fearing harm from cartel members and from police working with the cartel if the two were returned to Mexico.

An immigration judge denied their asylum applications based on an adverse credibility finding against Pineda Valdez. The Board of Immigration Appeals affirmed, identifying three inconsistencies between Pineda Valdez's hearing testimony and notes taken by an asylum officer during Pineda Valdez's asylum interview.

Pineda Valdez and his son now challenge the Board's ruling. We conclude the Board's decision was supported by substantial evidence and thus deny the petition for review.

I.

Humberto Israel Pineda Valdez and his son Humberto Pineda Cuellar, natives and citizens of Mexico, applied for asylum, withholding of removal, and protection under the Convention Against Torture. Their applications "are based on the same operative facts." J.A. 154. Those facts, in turn, depend on Pineda Valdez's version of events, which we recount here.

A.

Pineda Valdez ran a travel agency in Morelia, Michoacán. In December 2013, members of the Knights Templar cartel showed up at his agency and demanded that he pay

2

50,000 pesos or "[he] would know whatever they were capable of doing." J.A. 179–80. Pineda Valdez paid the money. A few weeks later, the cartel again demanded (and he again paid) 50,000 pesos. They told Pineda Valdez that 50,000 pesos would be the monthly amount "so [he] could work freely." J.A. 180. In January 2014, Pineda Valdez shut down his travel agency and went to live at his ranch outside the city.

Later that month, the cartel kidnapped him. Members of the cartel, armed with guns, stopped Pineda Valdez's car and told him that he had to come with them. After several hours of driving, his captors brought him to a house that was surrounded by men with guns. There, cartel members forced Pineda Valdez to complete visa applications for their associates and threatened to kill him and his family if he refused. While Pineda Valdez was held captive, the cartel pressured his mother to pay a ransom for his release. She paid the ransom, and the cartel released Pineda Valdez.

In June 2014, cartel members again visited Pineda Valdez. As Pineda Valdez could no longer pay the extortion, they demanded that he run a travel agency for the cartel. From August 2014 to February 2015, he did so—again, under surveillance and under threat of death and harm to him and his family.

After Mexican police arrested the cartel's leader in February 2015, Pineda Valdez was able to stop working for the cartel. He entered the United States in March 2015, and his son followed shortly thereafter. Both were admitted into the United States on tourist visas.

3

B.

Once in the United States, Pineda Valdez and his son applied for asylum, withholding of removal, and protection under the Convention Against Torture.[1]  Pineda Valdez appeared for an interview with an asylum officer, who referred both applications to immigration court.  Soon after, the Department of Homeland Security issued Notices to Appear, charging the father and son as removable under 8 U.S.C. § 1227(a)(1)(B) for overstaying their tourist visas.  Pineda Valdez conceded removability, and the court scheduled a hearing on his and his son's asylum applications.

Pineda Valdez and his son testified at the hearing.  Pineda Valdez said that he feared that cartel members would harm or kill him and his son if they returned to Mexico.

The government introduced notes taken during Pineda Valdez's asylum interview by the asylum officer who interviewed him.  The government and the immigration judge asked Pineda Valdez about several purported inconsistencies between the notes and his testimony.

The immigration judge found that Pineda Valdez wasn't credible based on his demeanor and "glaring inconsistencies between his asylum interview and his testimony."

---

[1] Pineda Valdez's son was initially a derivative beneficiary of Pineda Valdez's asylum application.  *See* 8 U.S.C. § 1158(b)(3).  The son later filed a separate application for asylum, withholding of removal, and protection under the Convention, claiming eligibility based on the cartel's threats against his father's family.  His removal proceedings were consolidated with his father's.

4

J.A. 99.   And the judge "denie[d] his Application on those grounds alone."[2]   J.A. 99.

Though the judge found Pineda Cuellar to be credible, he found Pineda Cuellar's claims to

be without merit because they were "simply based on what he had been told by his not

credible father."   J.A. 99.   Accordingly, the immigration judge denied their applications

and ordered their removal to Mexico.

C.

Pineda Valdez and his son appealed the immigration judge's decision to the Board

of Immigration Appeals, which affirmed.

The Board identified three inconsistencies that supported the adverse credibility

finding:

> [Pineda Valdez] testified at his asylum interview that he tried to escape the
> cartel numerous times after he was kidnapped, but that he was returned to the
> cartel by the police every time.  He testified at his asylum interview that the
> cartel attempted to stab and beat him on numerous occasions, but in
> Immigration Court, he testified that the cartel only threatened him and never
> physically harmed him.  [Pineda Valdez] testified at his asylum interview
> that he had several criminal charges pending against him in Mexico, but in
> Immigration Court stated that he had no criminal charges, only that the
> government had seized his house.

---

[2] Unlike asylum or withholding of removal claims, a Convention Against Torture claim can't be defeated by an adverse credibility finding alone. *Camara v. Ashcroft*, 378 F.3d 361, 371–72 (4th Cir. 2004); *Singh v. Holder*, 699 F.3d 321, 334 (4th Cir. 2012).  The immigration judge concluded in a single sentence that Pineda Valdez and his son hadn't met their burden for relief under the Convention.  Petitioners don't challenge this ruling before us.

J.A. 5.  The Board concluded that "[t]hese identified inconsistencies [were] relevant and supported by the record, and they provide[d] specific, cogent reasons for the Immigration Judge's adverse credibility finding."  J.A. 5.

This petition for review followed.[3]

## II.

Pineda Valdez and his son challenge only the Board's adverse credibility determination.  They argue that it isn't supported by substantial evidence because the Board didn't identify any actual discrepancies between Pineda Valdez's statements during his asylum interview and his hearing testimony, and failed to consider corroborating evidence.

We disagree.  The Board identified specific inconsistencies in support of its adverse credibility determination.  Against that backdrop, we can't say that any reasonable factfinder would be compelled to find Pineda Valdez credible.

---

[3] The immigration judge's order was an "order of removal" because it ordered that Pineda Valdez and his son be removed to Mexico. *Nasrallah v. Barr*, 590 U.S. 573, 581 (2020).  Because that order is final, we have jurisdiction to review it and "questions of law and fact . . . arising from" the removal proceedings.  8 U.S.C. § 1252(a)(1), (b)(9).

The government agrees that the petition for review is timely under 8 U.S.C. § 1252(b)(1).  As § 1252(b)(1)'s deadline isn't jurisdictional and the government doesn't seek dismissal on that ground, *Riley v. Bondi*, No. 23-1270, 2025 WL 1758502, at *3 (U.S. June 26, 2025), we need not decide the matter here.

A.

An adverse credibility determination is often fatal to an asylum claim and by extension a claim for withholding of removal—as it was here. *Camara v. Ashcroft*, 378 F.3d 361, 369 (4th Cir. 2004).

To qualify for asylum under 8 U.S.C. § 1158, Pineda Valdez and his son must show that they are refugees. 8 U.S.C. § 1158(b)(1)(A). A "refugee" is any person "who is unable or unwilling to return to" his home country "because of persecution or a well-founded fear of persecution on account of [a protected ground]." *Id.* § 1101(a)(42)(A). If an applicant can establish past persecution, a rebuttable presumption arises that he currently "has the requisite level of fear of persecution." *Camara*, 378 F.3d at 369–70. Otherwise, he must establish "a well-founded fear of persecution" by proving that he "is *subjectively* afraid and that the fear is *objectively* well-founded." *Id.* at 367.

The requirements for withholding of removal under 8 U.S.C. § 1231(b)(3) are generally the same as for asylum. But the standard of proof is higher. An applicant "must establish a 'clear probability' of persecution, rather than the less stringent 'well-founded fear' of persecution that will suffice to make out an asylum claim." *Salgado-Sosa v. Sessions*, 882 F.3d 451, 456 (4th Cir. 2018) (citation omitted). Thus, an applicant who can't satisfy the requirements for asylum will "necessarily . . . be unable to satisfy the higher standard for . . . withholding of removal." *Lopez-Benitez v. Garland*, 91 F.4th 763, 768 (4th Cir. 2024) (cleaned up).

For either form of relief, an applicant's testimony and, in turn, his credibility are often "paramount." *See Herrera-Alcala v. Garland*, 39 F.4th 233, 245 (4th Cir. 2022).

7

Where, as here, an applicant can't prove past persecution through independent evidence,[4] he must generally rely on his own testimony to establish either past persecution or the subjective element of well-founded fear.[5]  So a finding that his testimony isn't credible would defeat his claim.

Even a single inconsistency, inaccuracy, or falsehood may be sufficient for an adverse credibility finding—"without regard to whether [it] goes to the heart of the applicant's claim," 8 U.S.C. § 1158(b)(1)(B)(iii); *see id.* § 1231(b)(3)(C)—"so long as the totality of the circumstances establishes that an . . . applicant is not credible," *Herrera-Alcala*, 39 F.4th at 245.  This includes an inconsistency between an applicant's statements during his asylum interview and his later testimony.  *Id.*

To verify that an inconsistency indeed exists, "the [agency] must consider the [applicant]'s explanation for any inconsistency" and whether it could be "the product of interpretation errors, language-based confusion, or similar factors." *Ilunga v. Holder*, 777 F.3d 199, 208 (4th Cir. 2015).  But once the agency has identified an actual inconsistency, it "need not accept the [applicant]'s explanation for [it]." *Herrera-Alcala*, 39 F.4th at 245 (citation omitted).  And an adverse credibility determination is appropriate if the

---

[4] Petitioners don't argue that they've done so.

[5] "An applicant can demonstrate past persecution through [his] own testimony or independent evidence." *Anim v. Mukasey*, 535 F.3d 243, 252 (4th Cir. 2008).  But because "the subjective element [of well-founded fear] cannot generally be proved other than through the applicant's testimony," an applicant can't demonstrate a well-founded fear through independent evidence alone.  *Camara*, 378 F.3d at 369.

"discrepancy renders the entire testimony incredible in light of the record as a whole." *Ilunga*, 777 F.3d at 208.

B.

We review an adverse credibility finding for substantial evidence. *Herrera-Alcala*, 39 F.4th at 244. Under this standard, "reversal is only appropriate where [we find] that the evidence not only supports the opposite conclusion, but compels it." *Id.* (quoting *Tang v. Lynch*, 840 F.3d 176, 180 (4th Cir. 2016)). Though our review is deferential, the agency "must provide specific, cogent reasons" for its determination. *Ilunga*, 777 F.3d at 206.

Here, the Board[6] identified three inconsistencies as the basis for its adverse credibility determination against Pineda Valdez.

First, Pineda Valdez stated during his asylum interview that "when [he] managed to escape from [the cartel], the police . . . found [him] and took [him] back with them." J.A. 255–56. But later he testified that the police hadn't brought him back to the cartel. He'd only "planned to escape," but others told him that "no matter where [he went], they would always go to pick [him] up or to bring [him] back." J.A. 226–27.

---

[6] Generally, we review the "findings and order of the [Board], not those of the [immigration judge]." *Rusu v. INS*, 296 F.3d 316, 320 n.6 (4th Cir. 2002) (citation omitted). We may review an immigration judge's decision "only to the extent that the [Board] adopted it." *Mulyani v. Holder*, 771 F.3d 190, 196 (4th Cir. 2014); *see also Arita-Deras v. Wilkinson*, 990 F.3d 350, 356 (4th Cir. 2021).

As the Board "issued its own . . . opinion affirming the [immigration judge] with further reasoning of its own but without expressly adopting the [immigration judge]'s opinion," we review only the Board's decision. *Wambura v. Barr*, 980 F.3d 365, 368 n.2 (4th Cir. 2020).

9

Second, during the interview, Pineda Valdez said that the cartel "beat [him]" when they kidnapped him and "tr[ied] to stab [him] or beat [him] up" on several other occasions. J.A. 255; J.A. 257. During the hearing, he testified that the cartel threatened him but didn't physically harm him.

Third, Pineda Valdez told the asylum officer that there were two "warrant[s] for arrest against [him]" in Mexico—one from "the secretary of finance" and the other "for a fraud." J.A. 256; J.A. 258. At the hearing, he clarified that the complaints leveled against him were "administrative," J.A. 231, and that there were no criminal charges or arrest warrants against him. He explained that a judge had ordered him to appear to respond to an embargo placed on his house by the secretary of finance, but a second judge had dismissed the secretary's claim as meritless.

Pineda Valdez may have a point that the third "inconsistency" identified by the Board may not be an inconsistency at all. According to the Board, Pineda Valdez stated in his interview that "he had several criminal charges pending against him in Mexico." J.A. 5. That finding may "put far too much importance on the translated word ['warrant']"[7] and contradict evidence in the record. *Camara*, 378 F.3d at 369.

Pineda Valdez presented an order from a panel of the Federal Court of Administrative Justice of Mexico, an administrative—not criminal—tribunal. That order dismissed as unfounded two administrative actions against him—an embargo on his home

---

[7] Pineda Valdez's niece translated for Pineda Valdez and the asylum officer during the asylum interview.

from the Secretary of Finance of Michoacán and a fine issued by the Michoacán office of the Federal Consumer Protection Agency.

The tribunal issued the dismissal order two years after Pineda Valdez's asylum interview and one year before he would testify at the hearing. So, at the time of the interview, there were indeed two actions against him—one brought by the secretary of finance and the other by the consumer protection agency. And he had been ordered to appear. But by the time of the hearing, as Pineda Valdez explained, everything had been dismissed as unfounded.

In any event, the two remaining inconsistencies are more troubling. It appears that Pineda Valdez overstated both the harm inflicted by the cartel and the level of control the cartel (and the cops working with the cartel) exercised over him. Having identified these two inconsistencies, the agency was free to reject Pineda Valdez's explanations and conclude that he wasn't credible. *See Herrera-Alcala*, 39 F.4th at 245.

Because of these inconsistencies, we can't say that we're "compelled to conclude" that Pineda Valdez's testimony was entirely credible. 8 U.S.C. § 1252(b)(4)(B). Accordingly, the Board's adverse credibility determination is supported by substantial evidence.

11

III.

For the reasons above, we deny the petition for review.  We dispense with oral argument because the facts and legal contentions are sufficiently presented in the materials before this court and argument would not aid the decisional process.

*PETITION DENIED*